HARLEY O. STURM *v.* GEORGE R. SEAMONDS, *Mayor, et al.*

(CC 631)

Submitted May 8, 1940. Decided May 28, 1940.

*Scott & Ducker,* for plaintiff.
*Okey P. Keadle,* for defendant.

MAXWELL, JUDGE:

This case presents the question of the sufficiency of a petition for mandamus. The circuit court sustained a demurrer to the petition and certified the matter here for review.

The relator, Harley O. Sturm, is a policeman of the City of Huntington. The respondents, George R. Seamonds, Mayor of the City, R. C. Adkins, A. J. Baker, F. M. Mullins and L. J. Swann, are trustees of the Policeman's Pension or Relief Fund of that city. By bill in equity the respondents heretofore sought judicial determination of the legal question hereinafter considered. Their bill was dismissed because of lack of equity jurisdiction. *Seamonds, Mayor et al.* v. *Sturm,* 121 W. Va. 613, 5 S. E. (2d) 788.

In his petition the relator alleges that on March 26, 1926, he was appointed patrolman in the police department of the City of Huntington and immediately entered upon the duties of his employment and remained in active service until March 12, 1939, on which date, because of physical disability, he made application to the respondents for a pension; that on medical examination then had at the instance of the trustees the fact of relator's disability was officially ascertained, but the trustees refused to grant him a pension because of alleged irregularity attending his appointment as a policeman in 1926, in that

the relator was at that time forty-six years and eleven months of age, whereas, there was then in existence and effect a regulation of the civil service board of the City of Huntington fixing the maximum age for eligibility to employment as a policeman at forty-five years. Further, the relator alleges that when he was appointed and preliminarily thereto he made full and correct disclosure of his age to the civil service board, nevertheless that body approved his application and, upon his having passed satisfactory examinations, recommended him for appointment as a policeman by the proper authorities of the city.

For purposes of the demurrer the allegations of the petition are to be taken as true.

The Huntington charter provisions relating to the civil service board, in effect when relator was appointed a policeman, are in sections 75 to 78 of the Huntington Charter, appearing as chapter 11 of the Acts of the West Virginia Legislature of 1921 (Municipal Charters). Under the charter section 75, the civil service board was expressly directed to "adopt rules for its own government", and, further, in that section there is this provision: "In making such examinations (for appointment to the police and fire departments) the size, health, physical appearance, habits and moral surroundings shall be taken into consideration * * *."

Undoubtedly the board had the right to prescribe a rule or regulation fixing minimum and maximum age limitations. But what is the effect of such regulation on an over-age appointee who made no effort to misrepresent his age, the facts being known to the civil service board? This query need not be answered in the abstract, but specifically in the light of later legislation bearing, we think, directly on the question.

The legislation referred to is an enactment of 1937 prescribing civil service for police departments of all cities of five thousand population or more. Acts 1937, Chapter 57; Code, Chapter 8, Article 5A. The act provides for the appointment of policemen, their tenure of service through good behavior; forbids removal, discharge, or reduction in

rank or pay except for good cause; and prescribes methods of removal for cause. Section 18 of the act (Code, 8-5A-18) provides: "All paid policemen, including officers, except chiefs of police, who have had four years' service, in any city or municipal police department, and who are employed by any city or municipality on the date this act takes effect, shall be construed to have been appointed under the provisions of this act and shall hold their positions in accordance therewith. Policemen, including officers, who have not had four years' service in a paid city or municipal police department, shall be subject to the examination provided for in this act * * *."

Clearly, the import of the first sentence of the quoted portion of the act is that policemen who had been in service for four years when the act became effective should thereupon automatically be placed under the provisions of the act, and thereby there should be eliminated any question that may have existed respecting the regularity of their appointment. Such was the holding of the Supreme Court of Minnesota in a similar situation. *State* v. *McColl,* 127 Minn. 155, 149 N. W. 11. In that case, it was urged that a lieutenant of police was never legally entitled to hold his position because when appointed he was more than thirty-five years of age, whereas a charter provision, in effect when he was appointed, prescribed a maximum age limit of thirty-five years. A few years later, while the police lieutenant was still in service, an amended charter of the city provided: "All persons holding positions in the classified service of the city as established by this charter, at the time it takes effect, shall retain their positions until discharged, reduced, promoted or transferred in accordance therewith." The court held that this provision of the amended charter "confirmed relator in his office, and that he was a lawful incumbent of the office at the time of his attempted removal."

It is contended, however, at bar that the first sentence of section 18 (Code, 8-5A-18) applies only to policemen who had been regularly and legally employed, and that, as to them, the only effect of the provision is to relieve them from undergoing examinations as a condition pre-

cedent to their remaining in police service. Such would be a narrow and restricted view of the effect of the legislative language employed. On the contrary, we are impressed that this is a benign and salutary provision for placation and repose, intended by the legislature to have a curative and stabilizing effect, and therefore, there should be some degree of liberality in its interpretation and application. Consequently, we are of opinion that the purpose and result of this provision was to confirm in their positions all city policemen who had been in service for four years when the act became effective, and that thereafter such officers were to be dealt with as though they had received their appointment subsequent to the effective date of the act and in conformity with all provisions of law.

So, the conclusion being reached that the relator should have been considered a lawful member of the police department at the time he became ill and sought retirement privileges in the spring of 1939, it follows that he is entitled to the benefits of the policemen's pension fund, regardless of the flaw which may have existed in his appointment thirteen years previously. A statute of the state makes provision for retirement compensation to any policeman who has been regularly in the police service of a municipality for not less than five years and, from any cause, has become physically or mentally permanently disabled from rendering further service. Acts of the Legislature of 1935, Chapter 69, Section 18; Code, 8-6-18. This act is inclusive of all cities of the state whether they theretofore had police pension systems or not. In the City of Huntington, under ordinance, there has been in operation such pension system since June, 1926. To the fund created and maintained thereunder the relator, throughout the period of his active service as a city policeman, made all contributions required of him by law.

We are of opinion that the respondents were not warranted in denying to the relator the retirement privileges and benefits which he requested of them, therefore we

reverse the ruling of the trial court, overrule the demurrer to the relator's petition and remand the case tor further proceedings.

*Reversed and remanded.*