STOVER v RETIREMENT BOARD OF THE CITY OF ST. CLAIR
SHORES FIREMEN AND POLICE PENSION SYSTEM

1. STATUTES—STATUTORY CONSTRUCTION—PLAIN AND UNAMBIGUOUS
   STATUTE—AMBIGUOUS STATUTE—LEGISLATIVE INTENT.

   There is no room for judicial interpretation or construction of a
   statute where the statute is plain and unambiguous; however,
   if a statute is ambiguous, the Court of Appeals must interpret
   the language in a manner consistent with reason, considering
   any factors which may aid in determining the intent of the
   Legislature.

2. PENSIONS—RETIREMENT PLANS—MUNICIPAL CORPORATIONS—AVER-
   AGE FINAL COMPENSATION—WORDS AND PHRASES—STATUTES.

   Average final compensation, as the term is used in the fire and
   police department pension and retirement act, means the aver-
   age of the highest annual compensation received by a member
   during a certain number of years immediately preceding that
   member's retirement (MCLA 38.551 *et seq.;* MSA 5.3375[1] *et
   seq.).*

3. PENSIONS—RETIREMENT PLANS—MUNICIPAL CORPORATIONS—AN-
   NUAL COMPENSATION RECEIVED—WORDS AND PHRASES—STAT-
   UTES.

   Annual compensation received, as the term is used in the fire and
   police department pension and retirement act, refers to that
   pay which is received by a member each year for work done
   that year and includes base salary, longevity pay, shift differen-
   tial pay, holiday pay and overtime pay because those payments
   are made and received annually for work done that year; it
   does not include payments for accumulated sick or vacation
   time because those payments are made at time of separation
   and are not made regularly during a worker's tenure (MCLA
   38.551 *et seq.;* MSA 5.3375[1] *et seq.).*

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes §§ 145, 146, 194, 195.
[2, 3] 60 Am Jur 2d, Pensions and Retirement Funds §§ 2, 63.
  What constitutes "salary," "wages," "pay," or the like, within
  pension law basing benefits thereon. 14 ALR2d 634.

Appeal from Macomb, Raymond R. Cashen, J. Submitted May 3, 1977, at Detroit. (Docket No. 27897.) Decided September 20, 1977. Leave to appeal applied for.

Complaint by Gordon Stover against the Retirement Board of the City of St. Clair Shores Firemen and Police Pension System seeking superintending control ordering the defendant to include the payment of unused sick and vacation days in its computation of the plaintiff's average final compensation. Superintending control denied. Plaintiff appeals. Affirmed.

*Gregory, VanLopik & Higle,* for plaintiff.

*John H. Yoe,* for defendant.

Before: T. M. BURNS, P. J., and BRONSON and C. W. SIMON, JR.,* JJ.

C. W. SIMON, JR., J. The plaintiff was employed by the City of St. Clair Shores Police Department for over 31 years. He retired from that job in July of 1974. At the time of his retirement the plaintiff was paid cash for his accumulated and unused sick days and for his accumulated and unused vacation days. These payments were made pursuant to the collective bargaining agreement between the St. Clair Shores Police Officers Association and the City of St. Clair Shores.

In 1950, St. Clair Shores adopted 1937 PA 345, as amended, MCLA 38.551 *et seq.;* MSA 5.3375(1) *et seq.* The defendant is the "retirement board" under the act. When the defendant computed plaintiff's pension it did not include the payments for unused sick and vacation days in determining plaintiff's "average final compensation". The de-

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

fendant did include base salary, longevity pay, shift differential pay, holiday pay and overtime pay in its calculations.

Plaintiff filed suit in circuit court, alleging that the defendant's failure to include the payment for unused sick and vacation days in its computation of plaintiff's average final compensation violated § 6(1)(e) of the act, MCLA 38.556(1)(e); MSA 5.3375(6)(1)(e), now § 6(1)(f), MCLA 38.556(1)(f); MSA 5.3375(6)(1)(f), which provides:

"Average final compensation" shall mean the average of the highest annual compensation received by a member during a period of 5 consecutive years of service contained within his 10 years of service immediately preceding his retirement, or leaving service, or, if so provided in a collective bargaining agreement entered into between a municipality under this act and the appropriate recognized bargaining agent, may mean the average of the 3 years of highest annual compensation received by a member during his 10 years of service immediately preceding his retirement or leaving service. If he has less than 5 years of service, then average final compensation shall mean the annual average compensation received by him during his total years of service."

The defendant argued that the unused sick and vacation day payments were not part of plaintiff's base salary and were not intended by the Legislature to be included in a determination of average final compensation.

The trial court concluded:

"This Court holds that the terminal payment emanating from unused vacation and sick leave is not to be used in determining the 'Final Average Compensation' per MCLA 38.556, Subsection 6(e). To hold otherwise would misconstrue the concept of averaging income over a number of years as is provided for in the Act. An

Order denying the Writ of Superintending Control shall enter in pursuance hereof."

The plaintiff now appeals.

The only issue raised is whether cash payments for unused sick and vacation days which are paid upon retirement to a member of a retirement system established under 1937 PA 345, as amended, MCLA 38.551 *et seq.;* MSA 5.3375(1) *et seq.,* be included in determining the retiree's "average final compensation" under the act.

As both parties observe, resolution of this issue depends on the meaning of "average final compensation". It is our duty to give effect to the intent of the Legislature at the time the act was passed. *Husted v Consumers Power Co,* 376 Mich 41, 54; 135 NW2d 370 (1965). If a statute is plain and unambiguous, there is no room for judicial interpretation or construction. *Lansing v Lansing Twp,* 356 Mich 641, 648–649; 97 NW2d 804 (1959). However, if a statute is ambiguous, we must interpret the language in a manner consistent with reason, considering any factors which may aid us in determining the intent of the Legislature. See *Sergeant v Kennedy,* 352 Mich 494; 90 NW2d 447 (1958), *Schoolcraft County Board of Commissioners v Schoolcraft Memorial Hospital Board of Trustees,* 68 Mich App 654, 657; 243 NW2d 708 (1976), *lv den,* 397 Mich 838 (1976).

We have no particular difficulty in determining the meaning of the statute in question. Average final compensation means the average of the highest *annual compensation received* by a member during a certain number of years *immediately preceding that member's retirement.* Annual compensation received refers to that pay which is received by a member each year for work done

that year. Annual compensation received includes base salary, longevity pay, shift differential pay, holiday pay and overtime pay because those payments are made and received annually for work done that year. Annual compensation received *does not include unused sick or vacation payments* because those payments are not made regularly during a worker's tenure with the city. Those payments are properly viewed as a retirement bonus received at retirement and not as annual compensation received during a certain number of years immediately preceding the member's retirement.

Even if the language were considered to be ambiguous, we are not persuaded that the plaintiff's interpretation of the act would be correct. Dictionary definitions of compensation, while helpful, do not discuss compensation in the context of the act in question.

And while both parties cite *Banish v Hamtramck,* 9 Mich App 381; 157 NW2d 445 (1968), *lv den,* 381 Mich 779 (1968), for various propositions, *Banish* did not discuss the statute under consideration in the present case. *Banish* was concerned with a city charter provision which provided for pensions for police and fire fighters based on the pay of the member's rank at retirement. *Banish* did not involve accumulated sick or vacation days and their relationship to pensions.

The parties also comment on *Anderson v Pension and Retirement Board, City of Milford,* 167 Conn 352; 355 A2d 283 (1974). At first blush, *Anderson* appears to support the plaintiff's view of the Michigan statute. In *Anderson,* the Connecticut court held that a lump sum payment for unused sick days should be included in determining a retiree's pension benefits. The collective

bargaining agreement between the city and the union provided for a pension based on a determination of the retiree's average annual pay. Average annual pay was defined as "the average of all compensation including but not limited to * * * base salary, holiday pay, longevity pay, overtime pay, etc., which the employee receives during his or her three (3) highest paid fiscal years". Another collective bargaining agreement between the parties referred to each retiree's right to be "compensated" for unused sick days. Further, the stipulation of facts submitted by the parties in the case described the payments for unused sick days as "adjusted pay" and "compensation". Finally, the city deducted pension contributions and withholding taxes from the payments. In light of these facts, the Connecticut court found that payment for unused sick days fell within the meaning of "all compensation".

But *Anderson* is not the present case. *Anderson* was interpreting a collective bargaining agreement which had been bargained for by the city and which described average annual pay as the average of *all* compensation received by an employee over a certain period. We are interpreting a statute which defines average final compensation as annual compensation received by an employee during a certain period *immediately preceding* retirement. Even if *Anderson*'s facts paralleled those of the present case, we would disagree with the result.

The parties also rely heavily on other statutory pension programs in their arguments. See the state employees retirement act, MCLA 38.1 *et seq.;* MSA 3.981(1) *et seq.,* the Public School Employees Retirement Act, MCLA 38.201 *et seq.;* MSA 15.893(1) *et seq.,* and the Municipal Employees

Retirement Act, MCLA 38.601 *et seq.;* MSA 5.4001 *et seq.* Each of those acts provides for pensions based on an employee's average final compensation. Each act was originally silent on the subject of unused sick leave and unused annual leave payments. However, each act has been amended to specifically exclude unused sick leave payments from its definition of compensation. The Public School Employees Retirement Act specifically excludes unused annual leave payments from its definition of compensation. The Municipal Employees Retirement Act is also open to that interpretation.

The plaintiff argues that the amendments reflect the Legislature's belief that the various retirement acts include payments for unused sick and vacation days unless the act specifically provides otherwise. The defendant implies that the amendments are merely clarifications of the Legislature's original intent. Both arguments have merit but neither argument plainly outweighs the other.

In short, none of the arguments advanced by the plaintiff persuades us that our plain meaning view of the statute under consideration is incorrect. Retirement payments for unused sick and vacation days were not part of the annual compensation received by the plaintiff during his employment in this case.

Affirmed. No costs, a public question being involved.