371 S.E.2d 596

**Billy Jack CRAIG**

v.

**The CITY OF HUNTINGTON, etc.,
and the Huntington Police
Pension Board.**

No. 18137.

Supreme Court of Appeals of
West Virginia.

July 7, 1988.

James Allan Colburn, Huntington, for plaintiff.

Michael J. Farrell, Huntington, for defendants.

MILLER, Justice:

This is an appeal by Billy Jack Craig, a former police officer for the City of Huntington, from a judgment of the Circuit Court of Cabell County denying a portion of a writ of mandamus he sought to compel recalculation and payment of greater monthly disability pension benefits. The circuit court agreed that certain "fringe benefits" must be included in what we will term the "salary base" upon which pension benefits are calculated. However, the circuit court rejected his argument that a "lump sum" payment for accumulated and unused benefits must be included in the salary base for pension benefit computation. The City of Huntington and the Huntington Police Pension Board cross-appeal contending the trial court erred in including the fringe benefits in the pension calculation.

## I.

### Facts

The facts and conclusions of law contained in the circuit court's final order are as follows. Billy Jack Craig was employed as a police officer by the City of Huntington in August, 1967. In August, 1981, he made a formal written request for a disability pension based upon a complete loss of vision in his right eye due to medical problems unrelated to his employment. He was granted a disability pension by the Huntington Police Pension Board on December 20, 1981, in the amount of $900.14 per month.

In August, 1983, Officer Craig filed a petition for a writ of mandamus contending the city and pension board had a mandatory nondiscretionary duty to pay higher monthly disability benefits retroactive to the date of his retirement. The circuit court concluded that the computation of disability pension benefits for Officer Craig was controlled by the provisions of W.Va. Code, 8–22–24(a) (1981),[1] which provides that "[t]he monthly sum to be paid to each member eligible for disability ... shall be equal to sixty percent of the *monthly salary or compensation being received* by such member[.]" (Emphasis added).

The circuit court found that the pension board's practice of utilizing only base salary for the purpose of computing monthly disability pension benefits is also followed in Beckley, Charleston, Clarksburg, and Parkersburg, West Virginia. The pension board calculated Officer Craig's retirement, consistent with its uniform policy or practice in such cases, by including only his monthly salary. It did not include any amount for fringe benefit payments. For purposes of this case, the circuit court concluded that the terms "salary" and "compensation" were synonymous. The circuit court also concluded, however, that the disjunctive "or" should be read as the conjunctive "and" so that the salary base would include both "monthly salary" and "monthly compensation." Monthly compensation was determined to include fringe benefits.

---

1. W.Va.Code, 8–22–24(a) (1981), provides in material part:

    "The monthly sum to be paid to each member eligible for disability ... under the provisions of section twenty-four of this article ... shall be equal to sixty percent of the monthly salary or compensation being received by such member, at the time he is so disabled, or the sum of two hundred dollars per month, whichever shall be greater: Provided, That the limitation provided in subsection (b) of the section is not exceeded."

The circuit court found that as of his retirement date the following monthly fringe benefits, having a value of $271.72, were paid on Officer Craig's behalf by the Huntington Police Department: (1) hospitalization insurance benefit—$104.40; (2) prescription drug insurance—$8.00; (3) eye-care insurance—$4.25; and (4) sick days (2.5 days per month)—$155.08.[2]

The circuit court concluded that these fringe benefits had been erroneously excluded by the pension board and, therefore, ordered that Officer Craig's monthly pension benefit be increased by 60 percent of their value retroactive to the date of his retirement.

The circuit court also concluded that a lump sum "payout" of $10,953 paid by the City of Huntington to Officer Craig in December, 1981, did not constitute monthly salary or compensation being received within the contemplation of W.Va.Code, 8–22–24(a) (1981). This lump sum payment was for unused vacation, holiday, and sick leave that Officer Craig had accumulated in his approximately fourteen years of service as a police officer.

## II.

### Fringe Benefits

The first issue we address is whether the circuit court erred in concluding that fringe benefits should be included in the "salary base" for computing the amount of monthly disability pension benefits. It is appropriate to begin by identifying the nature of our inquiry, as explained by Judge Haymond in *Spencer v. Yerace*, 155 W.Va. 54, 59, 180 S.E.2d 868, 871–72 (1971), in another police pension case:

"The intention of the Legislature is ascertained from the provisions of the statute by the application of sound and well-established canons of construction, and the only manner in which the will of the Legislature is expressed is in the statute itself. In the construction of statutes, it is the legislative intent manifested in the statute that is important and such intent must be determined primarily from the language of the statute. *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars of the United States*, 144 W.Va. 137, 107 S.E.2d 353 [(1959)]. Statutes creating a pension and relief fund for municipal employees should receive a liberal construction. *Cawley v. The Board of Trustees of the Firemen's Pension or Relief Fund of the City of Beckley*, 138 W.Va. 571, 76 S.E.2d 683 [(1953)]; *Sturm v. Seamonds*, 122 W.Va. 338, 9 S.E.2d 227 [(1940)]. In ascertaining the legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation."

We recognized in *Cawley v. The Board of Trustees of the Firemen's Pension or Relief Fund*, 138 W.Va. 571, 76 S.E.2d 683 (1953), despite the general proposition that pension statutes should be liberally construed to effectuate the legislative purpose, that where the statute is "without ambiguity," it is the duty of the court to apply the statute "as written." 138 W.Va. at 578, 76 S.E.2d at 687.

More recently in *State ex rel. Board of Trustees v. City of Bluefield*, 153 W.Va. 210, 168 S.E.2d 525 (1969), this Court granted a writ of mandamus in favor of the Board of Trustees of the Policemen's Pension or Relief Fund of the City of Bluefield, requiring the city to levy taxes for the full amount of the Board's estimated expenditures. Finding the provisions of W.Va.Code, 8–6–14, to be free from ambiguity, the Court stated in Syllabus Point 1:

---

**2.** It is not clear from the record whether this sick pay benefit is a part of the lump sum payment of $10,141.91 that Officer Craig received in the year he retired. This included accumulated sick pay which totaled $8,684.20. The record contains an affidavit of the secretary of the police pension board which identifies the lump sum payment as including "monies for sick leave, vacation or holiday pay." The affidavit identifies "non-monetary fringe benefits, e.g. hospitalization insurance, prescription drug insurance or eye care insurance."

We conclude that the accumulated sick leave is not a fringe benefit, but comes within the lump sum payment issue which we discuss in Part III, *infra*.

" 'When a statute is clear and unambiguous and the legislative intent is plain the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.' Point 1, syllabus, *State ex rel. Fox v. Board of Trustees of the Policemen's Pension or Relief Fund of the City of Bluefield, et al.,* 148 W.Va. 369, [135 S.E.2d 262] [ (1964) ]."

The pension calculation statute, W.Va. Code, 8–22–24(a) (1981), uses the phrase "monthly salary or compensation." The words "salary or compensation" are defined by W.Va.Code, 18–22–16 (1981),[3] to mean "remuneration actually received by a member." This definitional language supports the circuit court's conclusion that the words "salary" or "compensation" are synonymous for pension benefit purposes in this case. This is because both words have a common meaning which is the "remuneration actually received by a member." The critical point for purposes of the fringe benefit issue is that payments made to third parties such as health care benefits, i.e., hospitalization insurance, eye care insurance, and prescription drug insurance benefits, are not remuneration actually received by the officer.

Even aside from our "remuneration actually received" standard, other courts faced with pension statutes calculating benefits based on salary have concluded that fringe benefits are not included in the salary base for purposes of computing pension benefit payments. In *Hay v. City of Highland Park,* 134 Mich.App. 624, 351 N.W.2d 622 (1984), the issue was whether payments made for hospitalization, eye care, and dental insurance could be utilized in calculating the final average salary. It concluded that they could not, stating:

"[A] fair number of courts have held in varying circumstances that pensions based on 'salary' do not include fringe benefits. *See, e.g., State ex rel. Henderson v. Schuele,* 25 Ohio St.2d 179, 267 N.E.2d 590 (1971); *City of Manitowoc v. Police Pension Board for the*

*City of Manitowoc,* 56 Wis.2d 602, 203 N.W.2d 74 (1973); *Hilligoss v. LaDow,* 174 Ind.App. 520, 368 N.E.2d 1365 (1977); *Jahn v. City of Woodstock,* 99 Ill.App.3d 206, 54 Ill.Dec. 625, 425 N.E.2d 490 (1981)."

See also *Guelfi v. Marin County Employees' Retirement Ass'n,* 145 Cal.App.3d 297, 193 Cal.Rptr. 343 (1983); *Rose v. City of Hayward,* 126 Cal.App.3d 926, 179 Cal. Rptr. 287 (1981); *Lugar v. State ex rel. Lee,* 270 Ind. 45, 383 N.E.2d 287 (1978); *Hohensee v. Regan,* 525 N.Y.S.2d 733 (A.D.1988); *Sawyer v. Salisbury,* 25 Ohio St.2d 217, 267 N.E.2d 590 (1971).

In *State ex rel. City of Manitowoc v. Police Pension Bd. for the City of Manitowoc,* 56 Wis.2d 602, 203 N.W.2d 74 (1973), a retiring police officer sought to have the city's contributions to his pension plan, payments for health and life insurance premiums, and holiday pay allowances included in the calculation of his pension benefits. The statute involved provided for a monthly pension equal to one-half of his "monthly compensation" at the time of his retirement. After reviewing the pension statute as a whole, the Wisconsin Supreme Court rejected the argument that the term "compensation" was broader than the term "salary" and stated:

"We are convinced that at the time the legislature provided for a pension equal to one half of the officer's monthly compensation, the legislature intended it to mean his monthly salary.

"If, in view of modern day employment inducements, fringe benefits such as insurance premiums, pension fund contributions and perhaps others are to be included in the formula for calculating pension benefits for police and firemen, the legislature, as a matter of desirable public policy, can so provide. The court cannot." 56 Wis.2d at 612a, 203 N.W.2d at 79.

We conclude, as this Court has done in previous pension cases, that the controlling

---

**3.** W.Va.Code, 8–22–16 (1981), states in material part: "For purposes of sections sixteen through twenty-eight [§§ 8–22–16 through 8–22–28] of

this article the words 'salary or compensation' mean remuneration actually received by a member[.]"

language of the statute is clear and unambiguous. The phrase "salary or compensation" is defined in W.Va.Code, 8–22–16, to mean "remuneration actually received by a member." This definition is modified in W.Va.Code, 8–22–24(a) (1981), by the word "monthly."[4] Thus the base for the calculation is the monthly remuneration actually received by the member. It is a recognized rule of statutory construction that "[e]ach word of a statute should be given some effect and a statute should be construed in accordance with the import of its language." Syllabus Point 6, in part, *State ex rel. Cohen v. Manchin,* 175 W.Va. 525, 336 S.E.2d 171 (1984).

■ Consequently, we conclude that fringe benefit payments to third parties for hospitalization, prescription drug, and eye care insurance do not constitute "remuneration actually received" under W.Va.Code 8–22–16 (1981), which is the definition of "salary or compensation" as that phrase is used in W.Va.Code, 8–22–24(a) (1981), the statute that provides the method for calculating the amount of a police officer's monthly disability pension benefit. Hence, the circuit court erred in including the fringe benefit payments in the salary base.

## III.

### *Lump Sum Payment*

The second legal issue presented is whether the circuit court erred in excluding the lump sum termination payment for accrued vacation, holiday, and sick pay in the salary base for pension benefit computation purposes. We are again brought to the language of W.Va.Code, 8–22–24(a) (1981), which provides: "The monthly sum to be paid to each member eligible for disability ... shall be equal to sixty percent of the monthly salary or compensation being received by such member[.]" Here the term "monthly" assumes critical importance. The phrase "salary or compensation," as we have earlier pointed out means remuneration actually received, but it is remuneration received on a monthly basis that is the statutory predicate. We believe

the circuit court was correct in holding that a lump sum payment for accrued vacation and sick leave covering a number of months cannot be considered as a part of the monthly salary or compensation. Obviously, this type of one-time payment is not a regular monthly payment received during one's tenure as a police officer, and thus is not properly considered in calculating monthly disability pension benefits.

Other courts that have considered this issue have uniformly found a lump sum payment upon retirement for accumulated benefits is not includable in the salary base for calculating pension benefits. Typical of the reasoning in this area is *Stover v. Retirement Bd. of St. Clair Shores,* 78 Mich. App. 409, 413, 260 N.W.2d 112, 114 (1977):

> "Annual compensation received *does not include unused sick or vacation payments* because those payments are not made regularly during a worker's tenure with the city. Those payments are properly viewed as a retirement bonus received at retirement and not as annual compensation received during a certain number of years immediately preceding the member's retirement." (Emphasis in original).

*See also Combs v. Cheek,* 283 Ark. 69, 671 S.W.2d 177 (1984); *Board of Trustees of the State Police Retirement Sys. v. Halsell,* 271 Ark. 815, 610 S.W.2d 881 (1981); *City of East Point v. Elam,* 257 Ga. 704, 362 S.E.2d 369 (1987); *Hohensee v. Regan, supra; Wallaesa v. Police Pension Comm'n,* 102 Pa.Commw. 238, 517 A.2d 1022 (1986).

■ We, therefore, conclude that the circuit court did not err in concluding that under W.Va.Code, 8–22–24(a) (1981), a lump sum payment for accumulated sick leave, vacation, or holiday pay is not includable in the salary base for the purpose of calculating disability pension benefits.

## IV.

### *Constitutionality*

The appellant claims that pension benefits are calculated differently for police of-

---

4. For the text of W.Va.Code, 8–22–24(a) (1981), *see* note 1, *supra.*

ficers who retire after twenty years of employment under W.Va.Code, 8–22–25(a).[5] For these regular retirees, the lump sum payment of accumulated benefits is included in the computation of monthly pension benefits.[6] For disabled police officers, as discussed earlier, the lump sum payment is not included in the salary base under W.Va. Code, 8–22–24(a) (1981).

The appellant contends this difference in methodology is unconstitutional and argues that it constitutes unlawful discrimination against the handicapped. The trial court in its final order found that W.Va.Code, 8–22–24(a) (1981), was not unconstitutional, either facially or as applied, and found Officer Craig had not been treated differently than any other disability pensioner. Furthermore, the circuit court concluded that Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which prohibits a program or activity receiving federal financial assistance from discriminating against otherwise qualified handicapped individuals, does not expressly forbid a state from adopting and enforcing a statutory system which differentiates between disability and retirement pensions.

The circuit court in a previous order had found that the appellant was a handicapped person as defined in 29 U.S.C. § 706(7) and that the City of Huntington received federal revenue sharing funds. *See generally Forrisi v. Bowen*, 794 F.2d 931 (4th Cir. 1986). The city and pension board assert that an unpublished opinion by the Fourth Circuit Court of Appeals, *Persinger v. City of Huntington*, 840 F.2d 11 (4th Cir.1988), should control. However, *Persinger* was decided on the narrow basis that the disabled police officer did not meet the definition of a handicapped person and, therefore, he had no standing to raise a handicapped discrimination claim with regard to the disparate treatment of lump sum payments under the pension statutes.

The appellant's chief authority is *Simon v. St. Louis County, Missouri*, 656 F.2d 316 (8th Cir.1981), *cert. denied*, 455 U.S. 976, 71 L.Ed.2d 688, 102 S.Ct. 1485 (1982), but this case dealt with the right of a police officer who had been injured in the line of duty to be rehired as a police officer under the Rehabilitation Act. The critical issue in *Simon* was whether the agency was one that received federal funds. This is one of the basic requirements that must be shown in order to bring into play the Rehabilitation Act.[7]

It appears that the United States Supreme Court has concluded that the "program or activity" receiving federal funds is a rather limited concept. In *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 79

---

5. W.Va.Code, 8–22–25(a) (1981), provides in relevant part:

"Any member of a paid police or fire department who is entitled to a retirement pension hereunder, and who has been in the honorable service of such department for twenty years, may, upon written application to the board of trustees, be retired from all service in such department without medical examination or disability; and on such retirement the board of trustees shall authorize the payment of annual retirement pension benefits commencing upon his retirement or upon his attaining the age of fifty years, whichever is later, payable in twelve monthly installments for each year of the remainder of his life, *in an amount equal to sixty percent of such member's average annual salary or compensation received during the three twelve-consecutive-month periods*, not necessarily consecutive, each of such three periods beginning with the same calendar month of different years and all such three periods falling within the member's final five years of employment with such department, in which such member received his highest salary or compensation while a member of the department, or an amount of two hundred dollars per month, whichever shall be greater." (Emphasis added).

6. The parties appear to agree to this fact and the trial court accepted it as true. For purposes of this case, we accept this premise without deciding whether under the regular retirement statute, W.Va.Code, 8–22–25(a) (1981), the inclusion of lump sum payments must be included in the pension benefit calculation.

7. In pertinent part, 29 U.S.C. § 794 (1978), provides:

"No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

L.Ed.2d 568, 104 S.Ct. 1248 (1984), it determined under the Rehabilitation Act that the federal funds received need not be for the primary purpose of providing employment, as concluded by the court of appeals. It went on to state that the phraseology in 29 U.S.C. § 794 relating to "program or activity receiving Federal financial assistance" means that "this language limits the ban on discrimination to the specific program that receives federal funds." 465 U.S. at 636, 104 S.Ct. at 1255, 79 L.Ed.2d at 578.[8] It does not appear that the Police Pension Board of the City of Huntington receives any federal funds. *See Foss v. City of Chicago*, 817 F.2d 34 (7th Cir.1987).

Of more fundamental importance is whether the Rehabilitation Act is designed to apply to disparate benefits under a state pension program. As the Supreme Court pointed out in *Darrone*, "[a]mong [the Act's] purposes, as originally stated, were to 'promote and expand employment opportunities in the public and private sectors for handicapped individuals and to place such individuals in employment." 465 U.S. at 626, 104 S.Ct. at 1250, 79 L.Ed.2d at 572.

■ Furthermore, this is a mandamus suit to compel recalculation of pension benefits. We are aware of no federal law that holds the Rehabilitation Act can be used in a state mandamus action to void a state pension statute. The Act does not provide such a remedy nor does it attain any constitutional status. For these reasons, we reject the appellant's argument under the Rehabilitation Act.

For the foregoing reasons, the judgment of the circuit court is affirmed in part, reversed in part, and remanded for entry of an appropriate final order.

Affirmed in part, Reversed in part, and Remanded with Directions.

---

**8.** We note that Congress passed in March, 1988, over the President's veto, a bill entitled the Civil Rights Restoration Act of 1987, Public Law 100–259, 102 Stat. 28, which legislatively reversed at least in part *Grove City Community College v. Bell*, 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984), and similar cases which held that a recipient of federal financial assistance was not prohibited from discriminating in a "program or activity" not directly benefiting from such assistance.