633 S.E.2d 521 (2006)
The WEST VIRGINIA CONSOLIDATED PUBLIC RETIREMENT BOARD, Defendant Below, Appellant
v.
Warren CARTER and Gerald Trembush, Plaintiffs Below, Appellees.
No. 32849.
Supreme Court of Appeals of West Virginia.
Submitted: March 28, 2006.
Decided: June 14, 2006.
*522 Anne Werum Lambright, Consolidated Public Retirement Board, Susan B. Saxe, Bowles, Rice, McDavid, Graff & Love LLP, Charleston, for Appellant.
Harry M. Rubenstein, Jennifer S. Caradine, Kay, Casto & Chaney PLLC, Morgantown, Counsel for Appellees.
*523 BENJAMIN, Justice.
This case is before the Court upon the appeal of the appellant, The West Virginia Consolidated Public Retirement Board (the "Board"),[1] from the October 8, 2004, order of the Circuit Court of Wood County, West Virginia, in Civil Action No. P-190. Therein, the circuit court reversed the decision of the Board dated October 2, 2002, which had found that Warren Carter, who retired on January 1, 2000, and Gerald Trembush, who retired on August 1, 2001, as employees of the West Virginia Secondary School Activities Commission (the "WVSSAC")[2], were not legally entitled to have the payments made to them by their employer for unused, accrued vacation days included in their "final average salary" for purposes of calculating their retirement benefits as retiring members of the Public Employees Retirement System ("PERS"). The effect of the circuit court's ruling in favor of Carter and Trembush was to increase their respective retirement benefits.
The Board asks this Court to reverse the circuit court's order of October 8, 2004, because its findings are contrary to West Virginia law concerning the definition of "final average salary," and because West Virginia law does not permit lump sum payments for unused, accrued vacation days in the calculation of retirement benefits. Carter and Trembush disagree with the definition urged by the Board for the term, "final average salary," and further contend that the statutory provisions cited by the Board relating to lump sum payments are not applicable to them. Trembush additionally argues that the Board should be estopped from acting to his detriment in the calculation of his retirement benefits.
This Court has before it the Board's petition for appeal, all matters of record, the *524 briefs of the parties, and has heard oral argument of counsel. For the reasons stated below, we reverse the circuit court's order of October 8, 2004.

I.

FACTS AND PROCEDURAL BACKGROUND
Except for the claim by Trembush that he detrimentally relied upon certain representations of the Board, the facts are not in material dispute. Carter was first employed by the WVSSAC in July 1985. Trembush was first employed by the WVSSAC in May 1993. Prior to their respective employments with the WVSSAC, both Carter and Trembush were employed in the West Virginia public school system for a number of years and were members of the teacher's retirement system. Upon becoming employed by the WVSSAC, both Carter and Trembush transferred their respective retirement accounts from the teacher's retirement system to PERS, and became members thereof.
The WVSSAC permitted its employees to carry over and accumulate certain unused vacation days from one year to the next. At the time of their respective retirements, Carter had 43 days and Trembush had 53.75 days of unused, accrued vacation time. On December 23, 1999, some eight days before his retirement, Carter was paid a gross lump-sum of $12,808.46, for his unused vacation time. Unlike Carter, Trembush elected to take his unused vacation pay, totaling $14,471.10, in installments over the three months immediately preceding his retirement (May, June and July, 2001). Trembush explained that he chose this method because he wanted to avoid, if he could, the possible application of W. Va.Code § 5-5-3 (1989), which, for some retiring employees at the time of Trembush's (and Carter's) retirement excluded lump sum payments for unused, accrued annual leave from the computation of a retiree's final average salary[.][3] Both Carter and Trembush requested that their unused, accrued vacation time be considered in the calculation by the Board of their respective retirement benefits.
Trembush further claims that his decision to retire at the time he did was based, at least in part, on his belief that his retirement benefit calculation would include the value of his unused, accrued vacation time. He asserts that a staff person at PERS made a representation to him at the time he was considering transferring his retirement account from the teachers' retirement system to PERS in 1993 that there would be no differences between the two systems that would operate to his detriment when he retired. Trembush contends that he should be entitled to have his unused, accrued vacation time valued into his retirement benefit as if he had been in the teachers' retirement system at the time of his retirement.
After the Board refused to include the payment of unused vacation time in their respective final average salaries for purposes of calculating their retirement benefits, both Carter and Trembush requested and were granted an administrative appeal. A hearing was held, after which the hearing officer, Jack W. DeBolt, issued a Recommended Decision, dated August 1, 2002, wherein he recommended that the requests of both Carter and Trembush be denied. The Recommended Decision also concluded that Trembush was not entitled to be treated differently based on his claim of detrimental reliance or statutory promise. The Board adopted the recommendations of the hearing officer and issued its decision, dated October 2, 2002.
Carter and Trembush appealed the Board's decision to the Circuit Court of Wood County (being the county wherein both Carter and Trembush resided). As noted above, the circuit court, in an order issued on October 8, 2004, reversed the Board's decision and ordered the Board to recalculate the retirement annuities of both Carter and Trembush "based upon the inclusion of compensation for unused vacation in Plaintiffs' [Carter's and Trembush's] final average salary." Upon the Board's petition, this Court *525 granted the Board's appeal of the circuit court's October 8, 2004 ruling.

II.

STANDARD OF REVIEW
"On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented de novo; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, Muscatell v. Cline, 196 W.Va. 588, 474 S.E.2d 518 (1996).

III.

DISCUSSION
This appeal presents the issue of whether retiring members of the West Virginia Public Employee Retirement System are entitled to have payments which are made to them by their employer for unused, accrued vacation days included in their "final average salary" for purposes of calculating their retirement benefits. Key to our consideration of this issue is the statutory language which determines the manner in which retirement benefits are calculated. We must first look to the relevant statutory definition of "final average salary"[4] as that term is used in W. Va.Code § 5-10-22(a) (1971),[5] and whether, by such definition, the Legislature intended that unused, accrued vacation days be included in the benefits calculation.
In addition to our consideration of the meaning of "final average salary," we must also consider whether W. Va.Code § 5-5-3 (1989), relating to lump sum payments for unused, accrued annual leave, is applicable herein; and, if so, whether this statutory section excludes payments for unused, accrued vacation time from the term "final average salary." Key to our consideration of this issue is whether "vacation time" is subsumed within the term "annual leave" for purposes of the express statutory prohibition against lump sum payments for such accrued time being used in the calculation of retirement benefits in PERS. Even if this express statutory prohibition applies to unused, accrued "vacation time," we must also consider the argument of Carter and Trembush that they are not "eligible employees" as that term is used in W.Va.Code § 5-5-3 (1989), and, therefore, that this code section is simply not applicable to them based upon their status as employees of WVSSAC.
Finally, we must consider the contention of Trembush that had he remained in the teachers' retirement system, his unused, accrued vacation time could be used to enhance the calculation of his retirement benefits. In this regard, Trembush asserts that certain representations were made to him by a staff person of PERS at the time of his transfer from the teachers' retirement system to PERS and that the Board should now be estopped from calculating his retirement benefits any less than what he contends he would have received as a member of the teachers' retirement system.

A.

W.Va.Code § 5-10-2 and the Meaning of "Final Average Salary"
Since the inception of PERS in 1961, "final average salary" has been one of the two principal determinants in the calculation of retirement benefits for retiring members. The other is "credited service." Since March 2, 1970, the retirement benefit, termed "a straight life annuity," has been "equal to two *526 per cent of [a retiree's] final average salary multiplied by the number of years, and fraction of a year, of [a retiree's] credited service, exclusive of limited credited service in force at the time of his or her retirement." W.Va.Code § 5-10-22(a) (1971) (emphasis added).
Insofar as here relevant, the statutory definition of "final average salary" has remained essentially the same since 1961:
(A) The average of the highest annual compensation received by a member . . . during any period of three consecutive years[6] of credited service contained within the member's ten years of credited service immediately preceding the date his or her employment with a participating public employer last terminated[.]
W.Va.Code § 5-10-2(16)(1997).[7] The word, "compensation," within the definition of "final average salary," has been defined since 1961, in substance and in relevant part, as "the remuneration paid a member by a participating public employer for personal services rendered by the member to the participating public employer." W.Va.Code § 5-10-2(15) (1997).
Focusing on the word, "salary," the Board argues that "salary" is commonly and ordinarily understood to mean a fixed amount of income regularly paid to an employee for services rendered. The Board asserts that payments upon retirement for unused, accrued vacation days are not regularly paid and should therefore not be considered in calculating retirement benefits under PERS. Carter and Trembush, on the other hand, focus on the term, "personal services rendered" within the definition of the term "compensation," and argue that the remuneration paid to an employee for working in lieu of taking vacation (the remuneration apparently being the payments made for unused, accrued vacation days) is clearly a benefit to the employer and is thus compensation for "personal services rendered" within the statutory definition of "compensation."
The parties' narrow focus on a specific phrase or word, however, overlooks the words with which the terms "salary" and "personal services rendered" are associated in the statutory language. We believe that a broader view of the statutory language is necessary to understand the context in which each word or phrase should be considered and, thereby, to determine the intent of the Legislature in establishing the PERS system.
We agree with the Board that the common and ordinarily understood meaning of "salary" is a fixed amount of income regularly paid to an employee for services rendered. "Each word of a statute should be given some effect and a statute should be construed in accordance with the import of its language." Syllabus Point 6, in part, State ex rel. Cohen v. Manchin, 175 W.Va. 525, 336 S.E.2d 171 (1984). Applying this rule of statutory construction, we conclude that the term "final average salary" plainly limits the calculation of retirement benefits to an annual salary paid to a member of PERS by a participating public employer for personal services rendered by the member to the participating public employer. That annual salary must be for personal services rendered by the member to a participating public employer and to no one else, and paid to the member by such employer and by no one else. If payment for unused, accrued vacation days is in fact "remuneration . . . for personal services rendered," the payment is neither "salary" nor "annual." A "salary" is a fixed amount of income regularly paid to an employee for services rendered. The adjective, "annual," means that the salary is specified or calculable in terms of a regular annual *527 or yearly amount, which may be payable in equal monthly, semi-monthly, or other periodic installments.[8]
This Court's decision in Craig v. The City of Huntington, 179 W.Va. 668, 371 S.E.2d 596 (1988), concerning the calculation of retiree benefits in the Policemen's Pension and Relief Fund, supports this conclusion. In Craig, we unanimously concluded that the circuit court had not erred "in concluding that under W.Va.Code 8-22-24(a) (1981), a lump sum payment [made to Huntington Police Officer Billy Jack Craig] for accumulated sick leave, vacation, or holiday pay is not includable in [Craig's] salary base for the purpose of calculating pension benefits." 179 W.Va. at 672, 371 S.E.2d at 600. We pointed out therein that "the term `monthly' assumes critical importance." Id. For that reason, we stated, the terms "salary" and "compensation" were synonymous and meant ". . . remuneration actually received, but it is remuneration received on a monthly basis that is the statutory predicate." Id.
Our reasoning in Craig guides us in the case before us now. It may be similarly said that the term "annual" in the instant case, like the term "monthly" in Craig, assumes "critical importance" because W.Va.Code § 5-10-2(16)(1997) defines "final average salary" as "[t]he average of the highest annual compensation received by a member [during a statutory-specified period]." "Compensation," being synonymous with "salary," is defined in W.Va.Code § 5-10-2(15) (1997) as "the remuneration paid a member"; which is quite similar to the definition of "salary or compensation" set forth in W.Va.Code § 8-22-16 (1981) as considered in Craig: "remuneration actually received by a member."
Carter and Trembush undertake to distinguish the persuasiveness of Craig on the basis that the statutory term involved in that case was "monthly" while in this case the statutory term is "annual." We do not believe that the two words serve such different purposes within their respective statutory sections as would indicate a legislative intent that payment for unused, accrued vacation days shall enter into the calculation of retirement benefits when "annual" is used, but not when "monthly" is used.
Significantly, our decision in Craig observed that "[o]ther courts that have considered this issue have uniformly found a lump sum payment upon retirement for accumulated benefits is not includable in the salary base for calculating pension benefits." Craig, 179 W.Va. at 672, 371 S.E.2d at 600. Craig cited Stover v. Retirement Bd. of St. Clair Shores, 78 Mich.App. 409, 260 N.W.2d 112, 114 (1977), as containing reasoning that is typical of the reasoning employed by the other courts. It quoted the following from the Stover decision:
Annual compensation received does not include unused sick or vacation payments because those payments are not made regularly during a worker's tenure with the city. Those payments are properly viewed as a retirement bonus received at retirement and not as annual compensation received during a certain number of years immediately preceding the member's retirement. [Emphasis in original]
Id. The Michigan court was considering a statute that was in terms of "annual compensation" and "average final compensation"; terms quite similar to those in the case currently before us.[9]
*528 We conclude that the Legislature did not intend to make a distinction in retirement benefits between a retiree who took a vacation and one who did not.[10] By its plain language, we find that the term "final average salary," as that phrase is used in W.Va. Code §§ 5-10-2(15) and (16) (2005) plainly limits the calculation of retirement benefits to an annual salary paid to a member of PERS by a participating public employer for personal services rendered by the member to the participating public employer and does not permit the inclusion of payments for unused, accrued vacation days in the calculation of retiree benefits.

B.

Applicability of W.Va.Code § 5-5-3 (1989) Concerning Lump Sum Payments
In 1989, the Legislature amended W.Va.Code § 5-5-3 (1989), regarding lump sum payments made to employees, to read:
Every eligible employee, as defined in section one of this article, at the conclusion of such employee's active employment by resignation, death, retirement or otherwise, may be paid in lump sum amount, at their option, for their accrued and unused annual leave at the employee's usual rate of pay at such time . . .; however, such lump sum payment may not be a part of final salary computation[.]
(Emphasis added.) In amending the statute, the Legislature changed statutory wording adopted in 1988 (and in effect from July 1, 1988, until April 8, 1989) which had read: "however, such lump sum payment is to be a part of final average salary computation[.]" (Emphasis added.) In doing so, the Legislature made a clear decision that lump sum payments for accrued and unused annual leave should not be included in the calculation of retirement benefits.[11] Carter and Trembush contend, however, that this statutory section is not applicable to them. First, they argue, as employees of the WVSSAC, they do not come within the definition of "eligible employee." Second, they argue that payment for unused, accrued vacation time is different from payment for "accrued and unused annual leave." We disagree with both contentions and find W.Va.Code § 5-5-3 (1989) applicable to the computation of retirement benefits for both Carter and Trembush.
*529 For purposes of W.Va.Code § 5-5-3 (1989), the term "eligible employees" is defined as "[a]ny regular full-time employee of the state or any spending unit of the state who is eligible for membership in any state retirement system of the state of West Virginia or other retirement plan authorized by the state[.]" W.Va.Code § 5-5-1(1) (1986). The term "spending unit" means "any state office, department, agency, board, commission, institution, bureau or other designated body authorized to hire employees." W.Va. Code § 5-5-1(3) (1986). Carter and Trembush contend that the WVSSAC is not a "spending unit" because it receives no money from the state, and, therefore, they are not "eligible employees" for purposes of W.Va. Code § 5-5-3 (1989).
Receipt of money from the state is not a prerequisite to an entity being a "spending unit" of the state. To be an employing "spending unit" for purposes of the statute at issue, an entity need not receive money from the state. W.Va.Code § 5-5-1(3) (1986). In contrast, "spending unit" for purposes of W.Va.Code § 5A-1-1 (1990) is defined as "a department, agency or institution of the state government for which an appropriation is requested, or to which an appropriation is made by the Legislature." Consequently, the contention of Carte and Trembush is not supported by the statutory language.
Carter and Trembush became eligible for membership in PERS only because their employer, WVSSAC, was a participating public employer in that system. W.Va.Code § 5-10-17(a) (1997). WVSSAC could qualify as a participating public employer only if it were "the State of West Virginia, any board, commission, department, institution or spending unit[.]" W.Va.Code § 5-10-2(5) (1971). It is this qualification of WVSSAC as a participating public employer that qualifies its employees to be "eligible employees" for purposes of W.Va.Code § 5-5-3 (1989).[12] Since Carter and Trembush made contributions to PERS believing that they were members of that system and came to rely upon it for their retirement, it is too late in the day for them to now question whether the WVSSAC qualified as a "participating public employer."
Carter and Trembush also urge this Court to conclude that the lump sum provisions of W.Va.Code § 5-5-3 (1989) are inapplicable to them because the term "accrued and unused annual leave," as used in the statute, does not include unused, accrued vacation time.[13] They argue that "annual leave" means "personal leave." While the circuit court below may have aptly characterized "personal leave" as requiring some form of justification for the leave to be taken, we note that the Legislature did not use the term "personal leave" in W.Va.Code § 5-5-3 (1989). Rather, the Legislature used the term "annual leave"; a term it has used in other statutory sections.
Based upon our review of the Legislature's use of the term "annual leave" in other statutory provisions, we conclude that "annual leave" is not the same as "personal leave." For example, in W.Va.Code § 5-16-13(k) (2001), the Legislature declared "that it is not now nor has it ever been the Legislature's intent that elected public officials be provided any sick leave, annual leave or personal leave[.]" (Emphasis added.) In the Parental Leave Act, as codified at W.Va. Code § 21-5D-4(a)(1) (1989), the Legislature provided that "[a]n employee shall be entitled to a total of twelve weeks of unpaid family leave, following the exhaustion of all his or her annual and personal leave, during any twelve-month period [for certain specified reasons]." (Emphasis added.) In both *530 instances, the Legislature made a distinction between "annual leave" and "personal leave."[14]
It is fair to conclude that the Legislature has clearly provided that "personal leave" is not "annual leave". We hold that employees of the WVSSAC are eligible employees for purposes of applicability of the lump sum provisions of W.Va.Code § 5-5-3 (1989) to the calculation of their retirement benefits under the Public Employee Retirement System. We further hold that the term, "annual leave," as used in W.Va.Code § 5-5-3 (1989), includes vacation time, and, therefore, the lump sum payment of unused, accrued vacation time may not be considered in calculating a retiring employee's retirement benefits under the Public Employee Retirement System.

C.

Trembush's Claim of Estoppel
Even if the statutory law is contrary to his contentions herein, appellee Trembush claims that the Board should be estopped from applying any different formula to his retirement calculations than if he were a member of the teachers' retirement system. He claims that his decision to retire at the time he did was based, at least in part, on his belief that he would be treated no differently as a member of PERS than if he were a member of the teacher's retirement system. He bases his contention upon his claim that a staff person of PERS represented to him at the time he was considering transferring his retirement account from the teacher's retirement system to PERS in 1993 that there would be no difference between the two systems that would operate to his detriment. The Hearing Officer below made a finding that there was no evidence of detrimental reliance on the part of Trembush, a finding which is to be accorded deference unless we believe that finding to be clearly wrong. See Syl. Pt. 1, Muscatell v. Cline, 196 W.Va. 588, 474 S.E.2d 518 (1996).
Without making any judgment here as to whether Trembush's unused, accrued vacation lump sum payment would or would not have been included in his retirement calculation had he retired from the teacher's retirement system instead of PERS, the claimed representation by a staff person at PERS, if made, was one of law rather than of fact and could not have been predicated or relied upon in 1993 for the year 2001, the year Trembush retired. See Ara v. Erie Ins. Co., 182 W.Va. 266, 270, 387 S.E.2d 320, 324 (1989) ("The doctrine of estoppel applies when a party is induced to act or to refrain from acting to her detriment because of her reasonable reliance on another party's misrepresentation or concealment of a material fact.") Moreover, we do not find that the Hearing Officer's determination that there was no detrimental reliance on the part of Trembush to be clearly wrong.
We, therefore, hold that appellees, Carter, who retired on January 11, 2000, and Trembush, who retired on August 1, 2001, as *531 employees of the WVSSAC, were not legally entitled to have the payments made to them by their employer for unused, accrued vacation days included in their "final average salary" for purposes of calculating their retirement benefits as retiring members of PERS.

IV.

CONCLUSION
For the reasons stated above, the Circuit Court of Wood County's order of October 8, 2004, in its Civil Action No. 02-P-190, is reversed.
Reversed
NOTES
[1] The Consolidated Public Retirement Board was created by the Legislature in 1990 "to administer all public retirement plans in this state": the Public Employees Retirement System (the largest of the plans) (established in W. Va.Code § 5-10-1, et seq.); the Teachers Retirement System (established in W. Va.Code § 18-7A-1, et seq.); the Teachers Defined Contribution Retirement System (established by W. Va.Code § 18-7B-1, et seq.); the West Virginia State Police Death, Disability and Retirement Fund (established by W. Va.Code § 15-2-1, et seq.); the West Virginia State Police Retirement System (established by W. Va.Code § 15-2A-1, et seq.); the Deputy Sheriff Death, Disability and Retirement Fund (established by W. Va.Code § 7-14D-1, et seq.); and the Judges' Retirement System (established by W. Va.Code § 51-9-1, et seq.). W. Va.Code § 5-10D-1(a) (2005). The "Board has all the powers, duties, responsibilities and liabilities of the [above-identified Retirement Systems and Funds] and their appropriate governing boards." W. Va.Code § 5-10D-1(d) (2005). The Legislature has made the Board a "trustee for all public retirement plans[.]" W. Va.Code § 5-10D-1(g) (2005). "The fiduciary duty of the Consolidated Public Retirement Board . . . with respect to employee pension funds and assets entrusted to the Board, includes the affirmative duty to monitor and evaluate the effect of legislative actions that may affect such funds and assets, and to take all necessary actions including initiating court proceedings if necessary to protect the fiscal and actuarial solvency of such funds and assets." Syl. Pt. 2, State ex rel. West Virginia Deputy Sheriff's Ass'n., Inc. v. Sims, 204 W.Va. 442, 513 S.E.2d 669 (1998).
[2] The West Virginia Secondary School Activities Commission was established by the Legislature in 1967. W. Va.Code § 18-2-25 (1967). It "is empowered to exercise the control, supervision and regulation of interscholastic athletic events and band activities" of public secondary schools and private and parochial schools delegated to it by county boards of education and private and parochial schools W. Va.Code § 18-2-25. The WVSSAC receives no funding from the State and its employees are not employees of the State or on its payroll. The WVSSAC is completely self-sustaining; its revenue is generated through dues paid by participating county boards of education and private and parochial secondary schools, event gate receipts, fees received for training provided to referees and officials, and corporate sponsorships. W. Va.Code § 18-2-25 declares that "all moneys paid to [the WVSSAC], as well as moneys derived [by the WVSSAC] from any contest or other event sponsored by [it], shall be quasi-public funds as the same are defined in [W. Va.Code § 18-5-1, et seq.], and such funds of the [WVSSAC] shall be subject to an annual audit by the state tax commissioner." On the basis of an Opinion of the Attorney General issued in 1980, the WVSSAC became a "participating public employer" of PERS on the ground that it came within the statutory definition of "the state of West Virginia, any board, commission, department, institution or spending unit[.]" W. Va. Code § 5-10-2(5)(1997). The employees of the WVSSAC thus became members of PERS, as provided in W. Va.Code § 5-10-17(a) (1997), and as presently provided in the same code section. W. Va.Code § 5-10-2 was amended, including the renumbering of subsections in 2005. Therefore, sections cited herein are those in effect at the time of Carter's retirement.
[3] In 2005, the Legislature modified this statutory provision to explicitly state "lump sum payment for unused, accrued leave of any kind or character may not be a part of final average salary computation[.]" W. Va.Code § 5-5-3 (2005) (emphasis added).
[4] The relevant components of the statutory definition of "final average salary," namely "highest annual compensation" and "compensation," have remained virtually the same throughout the years since the establishment of PERS in 1961. However, the numbering of the specific subsections within W. Va.Code § 5-10-2, et seq., in which these phrases appear have changed over the years. See supra, n. 2
[5] The Legislature amended W. Va.Code § 5-10-22(a) 2005 to include the following language. "Provided, that the final average salary used in this calculation does not include any lump sum payment for unused, accrued leave or any kind of character." Herein, we are asked to address the statute, as it existed, at the time of the events at issue and prior to the 2005 amendment. Therefore, we cite to the statute in existence at the time of Carter's retirement.
[6] Between 1961 and 1971, this period was five consecutive years.
[7] The term, "final average salary," or some variant thereof, with its own set of definitions, is also a determinant of the retirement benefits of a retiring member of other retirement systems: of a deputy sheriff under the Deputy Sheriff Retirement System Act (W.Va.Code §§ 7-14D-11(a), 2(a) and 2(s) (2005)); of a municipal policeman or fireman under the Policemen's Pension and Relief Fund and Fireman's Pension and Relief Fund (W.Va.Code §§ 8-22-25(a) and 16 (2005)); of a state trooper under the West Virginia State Police Retirement System (W.Va.Code §§ 15-2A-6 and 2(5) (2005)); and of a teacher as defined under the State Teachers Retirement System (W.Va.Code § 18-7A-26(a) (2005)).
[8] In International Ass'n. Of Firefighters v. City of Kansas City, 24 Kan.App.2d 98, 942 P.2d 45 (1997), the court was of the view that the term "salary" as used in a Kansas retirement statute does not include lump sum payments for unused sick leave, vacation time and compensatory time in that "salary" means " a periodic payment dependent upon time." 942 P.2d at 48. The court concluded that "[b]y definition, a lump sum payment which occurs once upon retirement cannot be a periodic payment." Id.
[9] Courts other than Stover that have considered the issue before us have expressed some illuminating opinions. In Kosey v. City of Washington Police Pension Board, 73 Pa.Cmwlth. 564, 459 A.2d 432 (1983), a case involving the legislative term, "highest average annual salary," it was clear to the court that its legislative body did not intend "for certain retirees to receive a large windfall simply because their [employer] chose to pay them a lump sum for unused vacation time in lieu of requiring them to take their vacation time prior to their official retirement date." Id. at 434. To the court, such a procedure "would permit an unacceptable disparity in pension benefits between the one who took off for his vacation during the retirement year and the one who saved his vacation time and pay until after the retirement date fixed by him." Id. The Kosey court found "thoughtful merit" in the following statement made in Casale v. Pension Comm. of Newark, 78 N.J.Super. 38, 187 A.2d 372 (1963): "To permit retroactive adjustments in salary to effect a pension increase would create a situation fraught with possibilities of favored treatment, potentially destructive of the orderly administration and financial soundness of a pension system[.]" Id.
[10] In City of Covington v. Board of Trustees, 903 S.W.2d 517 (Ky.1995), the primary issue before the Kentucky Supreme Court was "whether or not accrued terminal leave pay (unused sick and vacation time) is to be included in the calculation of `average salary' for purposes of age and service pensions and `last rate of salary' for disability benefit purposes." Id. at 518. The Kentucky Supreme Court ruled that such pay was not to be so-included and observed:

We have a real problem with designating the lump sum payment upon retirement as salary. . . where one employee is healthy and accumulates a considerable amount of sick leave, he or she would receive a large pension whereas another employee who unfortunately had to use most of his or her sick leave, would be punished for the rest of his or her life by receiving a much smaller pension. It is incongruous that where two employees working side by side making the same rate of pay and one is sick more than the other, for him or her to receive less pension for the rest of his or her life (which would continue to the surviving spouse and minor children upon death). We do not believe the General Assembly intended such a result.
Id. at 522-523.
[11] In 2005, the Legislature again amended W.Va. Code § 5-5-3, to make it read as it does today:

Every eligible employee . . . may be paid in a lump sum amount, at his or her option, for accrued and unused annual leave . . . however, lump sum payments for unused, accrued leave of any kind or character may not be a part of final average salary computation[.]
Thus, in 2005, the Legislature underscored its 1989 prohibition and made it even more emphatic that lump sum payments for unused, accrued annual leave of any kind cannot be used in the final average salary computation for retirement benefit purposes. In addition, in 2005, the Legislature added a proviso to W.Va.Code § 5-10-22(a) (the retirement annuity or benefit section of PERS) to declare "That the final average salary used in this calculation [of straight life annuity] does not include any lump sum payment for unused, accrued leave of any kind or character."
[12] As the Hearing Officer aptly noted in his Recommended Decision to the Board, "If SSAC is a part of the State for purposes of its employees participating in the PERS, it must inescapably be a part of the State for the purpose of § 5-5-1 and the application of § 5-5-3 to its employees."
[13] The circuit court agreed with Carter and Trembush, concluding:

Annual leave may be taken for matters such as accident sickness, family tragedy, and illness. Clearly, vacation is a different benefit designed to address a different purpose, and may be taken without justification or cause. [The Board's] theory is this matter seems to rest entirely upon the proposition that "annual leave" is the same as "vacation." Annual leave requires a reason for taking it, vacation is simply a gift and requires no justification or reason whatsoever.
[14] Other examples also underscore the difference between the more generic term, "annual leave", and the more specific term, "personal leave". The West Virginia Division of Personnel has promulgated a legislative rule, codified as W.Va. C.S.R. § 143-1-14.3, which authorizes employees subject to the rule "to accrue annual leave with pay and benefits." The rates of accrual are set forth in a table in that subsection. The rule also allows such employees to accrue sick leave with pay and benefits. W.Va. C.S.R. § 143-1-14.4. The annual leave accorded employees by this legislative rule does not in the words of the circuit court "require[] a reason for taking it" or "require[] . . . justification or reason[.]" Thus, what the Division calls "annual leave" is in fact "annual vacation" according to the definition which the circuit court would use. Two other statutory examples involving county commissions also underscore the difference between "personal leave" and "annual leave." W.Va.Code § 7-5-21 (1983) authorizes county commissions "to grant county employees annual and sick leave benefits." The Legislature did not require that those taking such annual leave have a reason for taking them. Also, W.Va.Code § 7-14-17a (1976) requires that each county commission "allow the sheriff's deputies in its employ vacation time accrued in the [manner there specified]." A corollary statutory section, W.Va.Code § 7-14D-10 (1998), authorizes deputy sheriffs to use accrued annual leave or sick leave days "at the time of retirement to acquire additional credited service in [the deputy sheriff's] retirement system." If "annual leave" as used in the corollary section does not mean the "vacation time" referenced in the first section, deputy sheriffs would have no days, other than sick days, to accrue for purposes of additional credited service.