STATE ex rel. JAMES M. FURLONG v. HENRY McCOLL and Another.[1]

October 9, 1914.

Nos. 19,066—(298).

**Municipal corporation — removal of subordinate.**
1. The St. Paul City Charter, by amendment effective June 1, 1914, gives

[1] Reported in 149 N. W. 11.

to heads of departments the right to remove subordinates by the methods prescribed in the chapter on civil service. This provision restricts the right of removal inherent in the power to appoint, and there is no right of removal except upon compliance with the requirements of the civil service chapter.

**Classified civil service — removal of employee.**

2. The amended charter contains a chapter regulating what is known as the classified civil service, provides that appointments to positions in the classified service shall be based on merit, and provides that the comptroller shall frame rules subject to the approval of the council, which rules shall provide "for discharge * * * only when the person * * * discharged * * * has been presented with the reasons for such discharge * * * specifically stated in writing, and has been allowed a reasonable time to reply thereto in writing." This provision is self-executing, and it became operative when the amended charter went into effect.

**Same — construction of charter.**

3. This provision does not contemplate that the officer sought to be removed shall be accorded a formal trial, but it does contemplate that removals shall only be for some cause touching the fitness and qualifications of the officer to discharge the duties of the office. The cause is to be determined by the removing officer, and his determination is quasi-judicial, and may be reviewed on *certiorari*. The fact that the removing officer does not assume to proceed under the provisions which the charter required him to follow, does not alter the case. The writ lies even if the action was arbitrary and without jurisdiction and void.

**Relator can contest irregular removal.**

4. The amended charter provides that "all persons holding positions in the classified service of the city as established by this charter, at the time it takes effect, shall retain their positions until discharged, reduced, promoted or transferred in accordance therewith." Under this provision the right of the relator to hold his office is confirmed, and it cannot be urged against his right to contest an irregular removal that he was over age when appointed.

Upon the relation of James M. Furlong, the district court for Ramsey county granted its writ of *certiorari* directed to Henry Mc-Coll, as commissioner of public safety of the city of St. Paul, and to the city of St. Paul, to review their action in dismissing relator. The respondent commissioner made return and the matter was heard before Brill, J., who quashed the writ. From the

judgment entered pursuant to the order quashing the writ, relator appealed. Reversed.

*Keller & Loomis,* for appellant.

*O. H. O'Neill,* for respondents.

HALLAM, J.

*Certiorari* to review the action of the commissioner of public safety of the city of St. Paul in dismissing relator from the police force. The St. Paul charter in its present amended form went into effect June 1, 1914. The commissioner of public safety is the head of the police department. Relator was a lieutenant of police when the amended charter went into effect. On August 4, 1914, the commissioner undertook to remove the relator by sending him a written notice in the following terms: "You are hereby notified that on this day you were removed, to take effect the 5th day of August, 1914, from the police department of this city for incompetency and inefficiency."

This attempted removal was ineffective.

The charter contains a chapter regulating the "civil service" and dividing the civil service of the city into classified and unclassified. The classified service includes relator. The charter provides that "all persons holding positions in the classified service of the city as established by this charter, at the time it takes effect, shall retain their positions until discharged, reduced, promoted or transferred in accordance therewith." Section 104.

It then provides that "all heads of departments having the power of appointing assistants, subordinates or employees shall have power to remove said officers under the resolutions and by the methods provided in the chapter on civil service." Section 477.

Section 101 makes the city comptroller civil service commissioner, and he is authorized to frame rules and regulations for the classified service, to be approved by the common council. It provides numerous things which the rules must contain; among others they must provide:

"For discharge or reduction, either in rank or compensation, after appointment or promotion, only when the person to be discharged

· or reduced has been presented with the reasons for such discharge or reduction, specifically stated in writing, and has been allowed a reasonable time to reply thereto in writing. The reasons and the reply must be filed as a public record with the commissioner." (Subd. L.)

No rules had been framed when this alleged removal was made. Respondent commissioner contends that, until such rules were framed and approved, the provisions of the civil service chapter were wholly inoperative, and that the commissioner possessed in the meantime an unrestricted power of removal as incident to his power to appoint. It may be conceded that the power of removal is an incident of the power to appoint unless it be otherwise provided. Parish v. City of St. Paul, 84 Minn. 426, 87 N. W. 1124, 87 Am. St. 374. But this charter does otherwise provide, for here the power of removal has been in terms denied the commissioner, except in accordance with the civil service chapter. If that chapter has not become operative, the power of removal does not exist at all.

We think, however, that subdivision L of the civil service chapter became operative regardless of the adoption of rules; in other words, that the provisions of subdivision L are self-executing and were operative as soon as the amended charter went into effect.

Much has been written in effort to furnish a test by which to determine whether constitutions and charters imposing limitations and conditions upon legislation are self-executing. No test easy of application has yet been furnished. Whether a provision is self-executing must be determined from a consideration both of the language used and of the intrinsic nature of the provision itself. In general, it is said that prohibitory provisions in a Constitution or charter are usually self-executing to the extent that anything done in violation of them is void; so is any provision that indicates that it was intended as a present enactment, complete in itself as definitive legislation not contemplating subsequent legislation to carry it into effect. It is not important that other legislation may be contemplated to supplement it. If the provision is to be operative at all events, and the nature and extent of the rights conferred and the liabilities imposed are fixed by it, so that they can be determined

by examination and construction of its terms, and the provision itself furnishes a complete working rule of conduct, it will be held self-executing, and the legislative authority will not be required to go through the perfunctory process of passing it in order to give it vitality.  See Willis v. Mabon, 48 Minn. 140, 50 N. W. 1110, 16 L.R.A. 281, 31 Am. St. 626; Cleary v. Kincaid, 23 Idaho, 789, 131 Pac. 1117.  In People v. Roberts, 148 N. Y. 360, 42 N. E. 1080, 31 L.R.A. 399, it was held that a constitutional provision requiring appointments to be made according to merit and fitness, to be ascertained, so far as practical, by competitive examinations, and providing that "laws shall be made to provide for the enforcement of this section," was held self-executing, and it was said: "If the legislature should repeal all the statutes and regulations on the subject of appointments in the civil service, the mandate of the Constitution would still remain and would so far execute itself as to require the courts in a proper case to pronounce appointments made without compliance with its requirements illegal."  The matter may not be free from doubt, but we are of the opinion that Subdivision L is of the same class.  It is absolutely mandatory in its terms.  The charter contemplates that it be supplemented by other rules, but, if rules were adopted which wholly failed to embody this mandatory requirement, there could be no doubt this provision would still be in force.  We think it was intended to be effective as soon as the amended charter became operative.  If this were not true, the power of removal vested in heads of departments was wholly suspended until such time as the comptroller should act in the framing of rules. Any such construction would give the comptroller the power to suspend indefinitely this power of removal by failure to frame any rules at all.  We cannot hold that such was the intent of the framers of the charter.  We hold that at the time the commissioner of public safety acted in this matter he had the power to remove the relator, but that before he could effect such removal he was obliged to comply with Subdivision L of section 101, and to present relator with the reasons for such removal, specifically stated in writing, and to allow him a reasonable time to reply thereto in writing.  Not having done so, his attempted removal of relator was void.

It is contended that relator has mistaken his remedy, and that a review of the action of the commissioner cannot be had by *certiorari*. It is well settled that *certiorari* lies to review the proceedings of municipal officers and commissions when their proceedings are judicial or quasi-judicial in their nature and there is no right of appeal. It is not always easy to determine whether the action of such municipal officer or commission is or is not judicial. In general, it may be said that to render their proceedings judicial or quasi-judicial, they must affect the rights or property of the citizen in a manner analogous to that in which they are affected by the proceedings of courts acting judicially. State v. Clough, 64 Minn. 378, 380, 67 N. W. 202. If the charter gave a right to a formal trial of charges before removal, there is no doubt that an order of removal would be a quasi-judicial act and that *certiorari* would lie. State v. Common Council of City of Duluth, 53 Minn. 238, 55 N. W. 118. If the commissioner has a right of removal, absolute, notwithstanding the facts or the explanations given, then the proceeding has no semblance of a judicial proceeding and cannot in this manner be reviewed. We must accordingly determine the character of the duty of the commissioner under these provisions of the charter.

Respondent contends that the power of the commissioner is absolute, and that the purpose of the provision which requires him to state the grounds for removal and to give the subordinate a chance to answer, is simply to put the commissioner on record. We think the provision is of more use than this. New York has for many years had a statute containing similar provisions for removal of subordinate municipal officers and employees. It was early held that, while these provisions gave no right to a formal trial, they were intended as a substantial limitation of the general power of removal, and that under these provisions removals can be made only for cause and the process for removal prescribed by statute must be pursued. The cause must be some delinquency or incapacity touching the fitness and the qualification of the officer to discharge the duties of the office; the removing officer may act upon his own knowledge of the facts or upon information furnished him by others, and, upon such knowledge and information and the showing made by

the subordinate, he is to judge whether cause for removal exists. In so doing, he must exercise a discretion which the courts cannot control. Such discretion is not, however, unlimited, and it can only be exercised in the manner prescribed by law. People v. Board of Fire Commissioners, 72 N. Y. 445; People v. Thompson, 94 N. Y. 451, 462. The right of the removing officer is in substance "a right to judge" the subordinate, and upon the decision, if favorable, to remove him. People v. Campbell, 82 N. Y. 247, 252. See also Truitt v. Philadelphia, 221 Pa. St. 331, 70 Atl. 757.

We adopt and follow the foregoing as the correct construction of the provisions of the charter of the city of St. Paul, and hold that the charter provisions referred to contemplate removals only for cause, the determination of which is for the commissioner. It should follow on principle that the proceeding is quasi-judicial and that *certiorari* will lie to review this action, and we so hold.

People v. Brady, 166 N. Y. 44, 59 N. E. 701, is cited as authority for the proposition that *certiorari* will not lie. This case was decided in 1901. For 23 years the courts of New York had been reviewing the action of the removing authorities upon writs of *certiorari*. People v. Board of Fire Commissioners, 72 N. Y. 446; People v. Board of Fire Commrs. of New York, 73 N. Y. 437; People v. Campbell, 82 N. Y. 247; People v. Thompson, 94 N. Y. 451. In some of these cases the order of removal had been reversed. True, the right of review by *certiorari* had never been in terms determined, because the right had never been questioned. In the Brady case, the statute had been complied with. Notice had been given and explanations made. The court said: "The sole question to be determined upon this appeal is whether the learned court below had any power to interfere with the action of the defendant *when it appeared that he complied with the statute by filing a statement of his reasons in writing, which, upon their face, justified the removal after the relator had an opportunity for explanation.*" The conclusion reached was that the court "had no power under the circumstances of this case, to review the defendant's action in removing the relator," and while it is stated that the action of the defendant in removing the relator was not a judi-

127 M.—11.

cial proceeding in any legal sense, the court adds that "the writ of *certiorari* does not lie to review his action except, possibly, in cases where he has not complied with the law in filing written reasons and affording the subordinate an opportunity for explanation." It will be observed that the court, in terms, declined to hold that *certiorari* was not a proper remedy in a case like this, where the removing officer fails to accord to the person removed the right to be advised in writing of the charges against him and the right to answer the same.

We cannot hold that the fact that the commissioner did not assume to proceed under the provisions of Subdivision L of section 101 of the charter, affects the right to review his action by *certiorari.* It is not the procedure he did follow, but the procedure the law required him to follow, that determines the applicability of the proceeding. In all cases where the writ is invoked there is some alleged deviation from the requirements of the law. The extent of the deviation is not material. The writ lies even if the action was arbitrary and without jurisdiction and void. Hagerty v. Shedd, 75 N. H. 393, 74 Atl. 1055; Combs v. Dunlap, 19 Wis. 591.

Respondent contends that the relator was never legally entitled to hold the office of lieutenant of police, and therefore should not be allowed to question the legality of the proceedings to remove him. This contention is based on a charter provision, in force at the time of his appointment, that "no person shall be eligible to appointment as a police officer, policeman or patrolman who is not * * * under the age of 35 years," and relator was beyond that age when appointed. (Section 368, charter of 1900). We are of the opinion that the provisions of section 104 confirmed relator in his office, and that he was a lawful incumbent of the office at the time of his attempted removal.

Judgment reversed.