Charlotte E. **DIETZ**, Respondent,

v.

**DODGE COUNTY, et al., Petitioners, Appellants.**

No. C9–91–73.

Supreme Court of Minnesota.

July 31, 1992.

Thomas P. Kelly, Brown & Bins, Rochester, for appellants.

Charles F. Angel, O'Brien, Ehrick, Wolf, Deaner & Moss, Rochester, for respondent.

COYNE, Justice.

On petition of Dodge County and its board of commissioners, we consider only the question of whether, consistent with the policies announced in our decision in *Dokmo v. Independent School District No. 11*, 459 N.W.2d 671 (Minn.1990), a petition for a writ of certiorari provides the exclusive means by which an employee can secure judicial review of the county's employment termination decision. The court of appeals held that the employee was not limited to the review afforded on certiorari, allowing thereby the maintenance by Charlotte Dietz of her action for wrongful termination. *Dietz v. Dodge County*, 472 N.W.2d 683 (Minn.App.1991). We reverse and reinstate the judgment of dismissal entered in the trial court.

The Fairview Nursing Home is owned and operated by the county and is overseen by two boards: the Dodge County Board of Commissioners and the Fairview Nursing Home Board. In 1982 layperson representation on the nursing home board was discontinued, leaving only active county commissioners to serve on the board. Dietz, a nursing home administrator licensed in Minnesota, interviewed with the nursing home board for the position of administrator. She claims that during the course of her second interview with the nursing home board in October 1979, a board member told her: (1) if she successfully completed the six-month probationary period, her job would be permanent; (2) "permanent" meant that she could not be dismissed without cause; and (3) the Fairview Nursing Home Personnel Policies applied to her. She cannot identify the person who made these remarks nor are they recorded in any form.

Upon completion of the interview process, Dietz was informed in writing that she had been selected as the nursing home administrator to commence work in January 1980 and was provided a copy of the home's personnel policies. In addition, there existed nursing home by-laws which purported to address specifically the terms of the administrator's employment as follows: "The Dodge County Fairview Nursing Home Board appoints the Administrator who serves an indefinite term. The Administrator may be terminated upon a 30 day written notice by either the Board of Directors or the Administrator." Dietz was aware of both documents early in her employment.

As demonstrated in summarized accounts of county board meetings, dissatisfaction with Dietz's performance began to surface in August 1983. On the occasion of the August 30, 1983 county board meeting, eight nursing home employees appeared and voiced dissatisfaction with Dietz. The following day two county commissioners presented Dietz with a letter, requesting that she tender her resignation within seven days and informing her that, failing that, the board would terminate her employment. The letter indicated that the board had identified managerial problems and low employee morale as the basis for its action. Thereafter, Dietz personally and by counsel, unsuccessfully requested information and an opportunity to respond. At a September 8, 1983 county board meeting, the board voted unanimously to terminate Dietz's employment effective September 30, 1983. No hearing was held.

On March 27, 1984 Dietz commenced an action for wrongful discharge against the county and each commissioner serving on the board during the fall of 1983. Because she did not seek review by certiorari within 60 days of notice of her termination, the county moved the district court to dismiss for lack of subject matter jurisdiction. The motion was denied at that time. Dietz later amended her complaint, alleging unlawful discrimination and seeking compensatory damages, reinstatement, and damages for mental anguish. After Dietz deposed the chairperson of the county board, the district court granted the county's motion to limit discovery in accordance with the administrative nature of the dismissal action.[1] On January 9, 1990 the district court denied the county's motion for summary judgment on the wrongful termination claim. It did, however, grant the county's motion for summary judgment on the unlawful discrimination claim; no appeal was taken from this judgment. Soon thereafter the county made three additional motions: (1) a motion to dismiss for failure to prosecute; (2) a motion in limine to prevent Dietz from introducing certain evidence; and (3) a renewal of its earlier motion to dismiss for lack of subject matter jurisdiction. At this time, the district court granted the motion to dismiss for lack of subject matter jurisdiction, concluding that Dietz's failure to obtain review by writ of certiorari within 60 days of notice of her dismissal was fatal. It did not rule on the other pending motions, concluding that

---

1. Dietz sought review of this discovery order by filing a petition for a writ of prohibition in the court of appeals. It denied the petition and by our order, we denied further review of that decision.

they were rendered moot by operation of the jurisdictional dismissal.

■ This court has long held that in the absence of an adequate method of review or legal remedy, judicial review of the quasi-judicial decisions of administrative bodies, if available, must be invoked by writ of certiorari. Review by certiorari is limited to an inspection of the record of the inferior tribunal in which the court

> is necessarily confined to questions affecting the jurisdiction of the board, the regularity of its proceedings, and, as to merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it.

*State ex rel. Ging v. Bd. of Education of Duluth,* 213 Minn. 550, 571, 7 N.W.2d 544, 556 (1942) (overruled on other grounds). Moreover, the relator must cause the writ of certiorari to issue within 60 days of notice of the adverse determination. Minn. Stat. § 606.01 (1990). Because it mandates nonintrusive and expedient judicial review, certiorari is compatible with the maintenance of fundamental separation of power principles,[2] and thus is a particularly appropriate method of limiting and coordinating judicial review of the quasi-judicial decisions of executive bodies.

■ We reiterated these principles most recently in *Dokmo v. Independent School Dist. No. 11,* 459 N.W.2d 671 (Minn.1990). In *Dokmo,* a teacher sought a judicial declaration that her termination was improper and that she was entitled to reinstatement. We held that a declaratory judgment action

to judicially review the school board's adverse determination was inappropriate because such potentially searching review would unconstitutionally invade the school board's decision-making processes and impermissibly upset efficiency concerns. *Id.* at 674–77. We concluded that judicial review, if available, had to be obtained by petition for a writ of certiorari. There was nothing particularly novel in this analysis and, historically, it has never inhered in school board cases alone.[3] Rather, the holding in *Dokmo* arose from a judicial recognition of separation of power concerns and a deference accorded a school board by virtue of the fact that such a body is a derivative of the executive branch of government. Thus, while the disposition of this matter is informed by and consistent with *Dokmo,* it does not depend on it.

For several reasons we conclude that writ of certiorari was the only mechanism by which Dietz could obtain judicial review of the county's decision to terminate her employment. First, Dietz was not entitled by statute to appeal the decision by traditional means. The county, not having statewide jurisdiction, is not subject to the Minnesota Administrative Procedure Act, Minn.Stat. § 14.02, subd. 2 (1990), and no statute specifically provides appeal to the courts from an administrative decision to terminate a county nursing home administrator. *See, e.g.,* Minn.Stat. ch. 144A (1990); Minn.Stat. § 376.55, *et seq.* (1990).

Second, because of the nature of the board's action upon which this dispute centers, the standard of review on certiorari is more appropriate to a review of the exercise of the board's discretion than would be the standard of review of an independent

---

**2.** Minnesota Constitution article III, § 1 reads:
DISTRIBUTION OF THE POWERS OF GOVERNMENT
> Section 1. **Division of powers.** The powers of government shall be divided into three distinct departments: legislative, executive and judicial. No person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution.

**3.** Since the late nineteenth century, this court has concluded that certiorari lies to review the

quasi-judicial decisions of a broad array of executive bodies. *See, e.g., State ex rel. Hart v. Common Council of City of Duluth,* 53 Minn. 238, 55 N.W. 118 (1893); *State ex rel. Furlong v. McColl,* 127 Minn. 155, 149 N.W. 11 (1914); *Beck v. Council of City of St. Paul,* 235 Minn. 56, 50 N.W.2d 81 (1951); *Sellin v. City of Duluth,* 248 Minn. 333, 80 N.W.2d 67 (1956); *State ex rel. McGinnis v. Police Civil Service Commission of Golden Valley,* 253 Minn. 62, 91 N.W.2d 154 (1958); *Bahr v. City of Litchfield,* 420 N.W.2d 604 (Minn.1988).

proceeding. Her request for reinstatement and damages for mental anguish highlights the fact that her claim is not an ordinary action for failure to perform on a contract for goods or services. The cause of action alleged in Dietz's complaint would require the rights and liabilities of the parties to be fixed not by the terms of the contract, but by the propriety of the county's exercise of discretion in terminating her. *Compare Oikari v. Independent School Dist. No. 40*, 170 Minn. 301, 212 N.W. 598 (1927); *Backie v. Cromwell Consolidated School Distr. No. 13*, 186 Minn. 38, 242 N.W. 389 (1932) (actions for salary in which the plaintiffs alleged their employment contracts were for a specified term). The issue which Dietz would have the court review demands scrutiny of the manner in which the county has discharged its administrative function; the very type of scrutiny that runs a grave risk of usurping the county's administrative prerogative. Thus, to the extent that she has characterized her contract as requiring cause to dismiss, she has raised a threshold issue which at least arguably renders the county's termination decision quasi-judicial in nature, warranting the issuance of writ of certiorari. *See, e.g., State ex rel. Furlong v. McColl*, 127 Minn. at 160, 149 N.W. 11; *State ex rel. McGinnis*, 253 Minn. at 70–71, 91 N.W.2d 154.

Third, whether she entered into a "for cause" or "at will" employment contract is a question of law that is appropriate for review on certiorari.[4] While the record in this case plainly falls short of a record generated in formal judicial proceedings, it is certainly adequate to ascertain the type of employment contract to which Dietz was a party.

Finally, in terms of practicality and cost, this case vividly illustrates the inappropriateness of permitting Dietz to obtain judicial review of the county's termination decision by way of a wrongful termination claim. A six-year statute of limitations, extensive discovery procedures, and a panoply of rules attend her cause of action. As a direct consequence, her wrongful termination claim remains unresolved and largely unexamined by the courts almost nine years after the termination of her employment. In stark contrast, the writ of certiorari must issue within 60 days of notice of the adverse determination, contemplates none of the procedural rules that accompany a civil action, and affords direct review by the court of appeals. *Dokmo*, 459 N.W.2d at 677. Thus, certiorari ensures expedient review of a fresh record.[5] The record of this case is anything but fresh: evidence has grown stale, witnesses have moved, and one of the named county commissioners has died. This delay in the assessment of the merits of the case is particularly troublesome in light of the fact that Dietz seeks compensatory damages, reinstatement, and damages for mental anguish. At this late date, we think it both unnecessary and improper to expose an executive body to such potentially extensive liability for exercising a discretionary administrative decision.

Our conclusion that Dietz was obliged to seek judicial review of the county's termination decision by writ of certiorari stems not from slavish adherence to hypertechni-

---

**4.** Dietz asserts that an unidentified county commissioner told her that she could not be dismissed but "for cause." Even assuming that such a volunteered oral representation was made by a commissioner, because it was never recorded, put to a motion, accompanied by any formal procedure, or in any way adopted by the board, as a matter of law such a remark does not change the legal effect of the terms of the employment contract at issue. Rather than proposing a contract to Dietz, the unidentified commissioner, if he made the alleged comments, stated a legal conclusion as to the meaning of a contract between the administrator and the county, the terms of which can be ascertained by reading the personnel policies and bylaws. As such, any claim arising from the commissioner's alleged assessment of the legal consequence of the employment contract sounds in tortious misrepresentation. *See Northernaire Productions, Inc. v. County of Crow Wing*, 309 Minn. 386, 244 N.W.2d 279 (1976); Minn.Stat. § 466.03 (1990).

**5.** The dissent does not address the singular issue we here decide, i.e., the necessity to seek prompt review by obtaining a timely writ of certiorari; instead, the dissent focuses on the issue decided earlier in *Dokmo, supra,* regarding the nature of the review afforded rather than the timeliness of the request for review.

cal rules, but from our long-standing recognition that when the core discretionary acts of executive bodies are challenged, the continued vitality of fundamental constitutional principles compels the judiciary to exercise limited scrutiny.

Reversed.

GARDEBRING, Justice (dissenting).

I respectfully dissent. Although I agree that administrative decisions made by the executive branch of government are entitled to deference, I believe the decision in this case exalts form over substance and effectively denies persons in appellant's position any meaningful appellate review. Contrary to the majority's position, efficiency is not served by the harsh 60–day deadline to petition for certiorari, especially on the apparent facts[1] of this case.

Historically, review by writ of certiorari is limited to looking at the legal import of the facts in the record and determining whether there was a reasonable basis for the lower tribunal's decision. Riesenfeld, Bauman, and Maxwell, *Judicial Control of Administrative Action by Means of the Extraordinary Remedies in Minnesota,* 33 Minn.L.Rev. 685, 707–10 (1952). What that means is that in reviewing the quasi-judicial decisions of government agencies, courts will defer to decisions that are based on evidence in the record. But there are some serious problems with application of that principle to this case. The appellant has alleged that she had an employment contract which could be terminated only for cause. Had appellant appealed her discharge by petitioning for a writ of certiorari, our job would have been to look at the legal import of the facts in the record and determine whether there was a reasonable basis for the lower tribunal's decision that appellant's discharge was not contrary to terms of any contract she had. But we would not have been able to perform that task because the record is inadequately developed.

To engage in a proper review, this court would have needed to evaluate the facts underlying the county's action and determine whether appellant had a contract and whether it was breached. There is no reason why our duty of deference to a co-equal branch of government precludes us from deciding such questions. It is not our role to second-guess the county's decision, so long as there is evidence in the record to support it. But at the same time, it is entirely inappropriate for us to approve of contracts being breached, whether by a government agency or anyone else.

The majority's analysis takes deference to an unreasonable extreme. In effect, the county has been able to shield its action from meaningful review by failing to make an adequate record. We are forced to take the county's word that there was a reasonable legal basis for its action. This abdication of our responsibility to deferentially but meaningfully review government action against an individual means we are blindly deferring to an agency that acted both as prosecutor and judge, and leaving the potentially injured individual with no remedy against the tyranny of that agency.

Under the majority's reasoning, even if appellant had met the strict deadline for review by certiorari, we would be forced to reach the same result and uphold her discharge. That is because there would have been virtually no record for us to review, deferentially or otherwise. With the trial court record wiped out for lack of subject matter jurisdiction, the county board record consists of some letters and some abbreviated minutes of board meetings.

In a sense, appellant did this court's job for us by instituting her action in district court so that some kind of record would be

---

1. One of the problems in this case is that the county board appointed itself to serve as the hospital board, too. From the skimpy record before us, it is unclear whether the decision to fire appellant was made at a meeting of the county board or the nursing home board, or whether board members made any effort to keep hospital business and county business separate.

available for appellate review. Neither this court nor the court of appeals is equipped to develop a factual record where one does not exist. That is the specialty of the trial courts.[2] Under the majority's decision, however, the choice to make an adequate record is left in the hands of a participant in the controversy. That unavoidably produces a one-sided record. That, combined with our deference for the lower tribunal, is virtually guaranteed to result in an affirmance of the tribunal's decision. Such a process could hardly be mistaken for a meaningful review.

While the majority says its holding does not depend on *Dokmo v. Independent School Dist. No. 11,* 459 N.W.2d 671 (Minn. 1990), that case is our most recent iteration of the notion that we will be deferential to quasi-judicial decision making of executive bodies. *Dokmo* rejected the notion that a hearing is necessary to create an adequate record, but said "it is the [executive body's] *obligation* to make a sufficient record to prove its actions were justified." *Id.* at 676 (emphasis in original). This standard of sufficiency has simply not been met here where the county/nursing home board minutes tell us about as much as would a soliloquy by Marcel Marceau.

Under today's decision, a public body is rewarded for failing to keep detailed records of its actions. I would hold that where a public body fails to maintain detailed records of how and why it discharged an employee, the employee may elect to pursue her remedy with an action in district court. In this case, with no meaningful record available, appellant acted quite reasonably in commencing her action in district court, even if she then delayed prosecuting it. Because I also agree with the court of appeals that there are genuine issues of material fact regarding appellant's contract claim, I would remand the case for trial.

2. The problem of inadequate records is likely to recur, especially since jurisdiction to hear appeals by writ of certiorari has been limited to the court of appeals and this court. Minn.R.Civ. App.P. 115, 116. At the time appellant was

WAHL, Justice (dissenting).

I join in the dissent of Justice Gardebring.

discharged, trial courts also had certiorari jurisdiction. The trial court in this case would have had to hold a mini-trial anyway to supplement the county board's record.