James R. MANTEUFFEL, Appellant,

v.

CITY OF NORTH ST. PAUL,
Respondent.

No. C3–95–837.

Court of Appeals of Minnesota.

Oct. 24, 1995.

Brian C. Southwell, Minneapolis, Charles W. Faulkner, Faulkner & Faulkner, Minneapolis, for appellant.

David J. Hoekstra, Jardine, Logan & O'Brien, St. Paul, for respondent.

Considered and decided by SHORT, P.J., and PARKER and KLAPHAKE, JJ.

## OPINION

PARKER, Judge.

The district court dismissed James Manteuffel's Whistleblower claim for lack of subject matter jurisdiction, holding that his sole method of obtaining judicial review of the City of North St. Paul's decision to terminate his employment was by writ of certiorari directly to this court. We reverse and remand.

## FACTS

In March 1990, the City of North St. Paul hired appellant Manteuffel as a probationary police officer. During a response to a complaint about a stolen pizza, one of Manteuffel's training officers became involved in an altercation with a youth. Manteuffel subsequently informed the officer that he thought the officer had used excessive force on the youth. A few days after the incident, two of Manteuffel's field training officers recommended his immediate termination to Police Chief Sapp. Less than a week later, city manager Robert Gatti terminated him pursuant to Sapp's recommendation.

Manteuffel filed a district court claim against the city for age discrimination and violation of the Whistleblower Act. He sought compensatory damages and reinstatement to a comparable employment position, or to be paid damages in lieu of reinstatement. The trial court granted summary judgment to the city on both claims. On appeal, this court affirmed dismissal of the age discrimination claim, but reversed and remanded on the Whistleblower claim, finding that there existed material issues of fact regarding the latter claim.

On remand, the trial court again dismissed the Whistleblower claim, this time holding that it lacked subject matter jurisdiction under *Dietz v. Dodge County,* 487 N.W.2d 237 (Minn.1992) (holding that the exclusive method for an employee to receive judicial review of a county employer's termination decision is by writ of certiorari). We are now asked, on this appeal, to decide whether the *Dietz* rule applies to cases wherein the legislature has authorized a civil cause of action in the district court. We hold that *Dietz,* by its own explicit terms, does not apply to such cases.

## ISSUE

Is a writ of certiorari to this court the exclusive method of review available to a public employee injured by the violation of a

statute that authorizes a civil cause of action in the district court?

## DISCUSSION

Manteuffel argues that this case presents a "matter of first impression" and that this court should make an exception to the *Dietz* rule following the logic of the Minnesota Supreme Court in subsequent cases that the rule does not always apply to employment decisions made by public employers. Although Manteuffel's argument is compelling, we see no reason for this court to establish an exception, because *Dietz*, by its own explicit terms, does not apply to this case. Furthermore, we are not faced here with a difficult constitutional question. The principles of jurisprudence at issue in this case have been settled since *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803).

■ The city argues that a Whistleblower claim against a municipality in a district court would constitute an unconstitutional intrusion by the judiciary into the administrative decisions of a municipality. In support of its argument, the city relies upon the Minnesota Supreme Court's "longstanding rule and repeated holding," reaffirmed in *Dokmo v. Independent Sch. Dist. No. 11,* 459 N.W.2d 671, 674 (Minn.1990). The *Dokmo* court held:

> [T]he proper and only method of appealing school board decisions on teacher related matters is by writ of certiorari.

*Id.* The Minnesota Supreme Court subsequently made it clear that this rule applies generally to termination decisions made by state and local administrative bodies:

> [A] petition for a writ of certiorari provides the exclusive means by which an employee can secure judicial review of [a] county's employment termination decision.

*Dietz,* 487 N.W.2d at 237. The Court based its decision in part on

> [its] longstanding recognition that when the core discretionary acts of executive bodies are challenged, the continued vitality of fundamental constitutional principles compels the judiciary to exercise limited scrutiny.

*Id.* at 241.

■ Respondent city emphasizes the importance of its ability to make administrative decisions without intrusions by the judiciary. Procedure by writ of certiorari, of course, is less intrusive than a *de novo* trial, due to the limited standard of review that accompanies it. On writ of certiorari, a plaintiff has the burden of demonstrating that the agency's order or determination was "arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *Id.* at 239.

In this case, however, such a standard of review is inappropriate. The court is not being asked to decide whether the city's action was reasonable, or whether the city had cause to terminate Manteuffel. Rather, the court must determine whether the city itself violated the law. Given the fact that Manteuffel has had no opportunity to develop a factual record, his task of proving the unreasonableness of the city's decision would be a virtual impossibility. The same would be true of any employee seeking judicial review of an administrative body's employment decision that allegedly violates state law. Injured parties in such cases would have the almost insurmountable task of proving that the administrative employer's action was entirely arbitrary. Such a result is contrary to the intent of the legislature, which contemplated the state and its subdivisions as potential defendants in civil rights cases such as those brought under the Minnesota Human Rights Act or the Whistleblower Act. *See* Minn.Stat. §§ 363.01, subds. 17, 28; and 181.931, subd. 3 (1994).

Even if the city can provide substantial evidence in support of its termination decision, the Whistleblower statute is still violated if the actual reason for firing Manteuffel was because he had reported the use of excessive force by an officer. Thus, the "arbitrary and capricious" standard of review is inappropriate in such cases.

We also note that the Supreme Court of Minnesota has long held that the actions of administrative bodies are subject to judicial

scrutiny when the legality of the conduct has been called into question:

> [W]hen litigation properly presents a question whether proposed administrative action of an executive or administrative official is within the law, constitutional or statutory, both the subject of inquiry and the duty of decision are at once and automatically removed from the field of executive to that of judicial action and duty. (Of course, if the question is political rather than legal, the courts will have nothing to do with it in any event.) No proposition is more thoroughly settled in the jurisprudence of both the United States and England.

*Rockne v. Olson,* 191 Minn. 310, 313, 254 N.W. 5, 7 (1934) (citing *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803) and other cases). *See also Juster Bros., Inc. v. Christgau,* 214 Minn. 108, 7 N.W.2d 501 (1943) (holding that courts may review administrative actions to determine whether they are in compliance with both statutory and constitutional law).

Manteuffel, nonetheless, appears to concede that there is a separation of powers conflict present here. He maintains, however, that this case calls for an exception to the rule of *Dokmo* and *Dietz.* The exception he apparently argues for is that when an administrative body must review not only the conduct of an employee, but also its own conduct, *Dokmo* and *Dietz* are not applicable. Manteuffel cites *Graham v. Special Sch. Dist. No. 1,* 472 N.W.2d 114 (Minn.1991), a wrongful termination case in which the Minnesota Supreme Court observed:

> In this situation, the school board is being asked to judge not just the conduct of the employee it is proposing to discharge, but the lawfulness of the district's own conduct as the employer. It is being asked to judge whether it has, itself, engaged in unlawful discrimination against the employee.

*Id.* at 119. The court concluded that, rather than deferring to the school board's decision, the trial court must consider all of the relevant evidence. *Id.* In a subsequent case, the Supreme Court again reiterated some of the inherent problems presented by cases such as *Graham* in which an agency is asked to decide whether it has violated the law:

> [T]he teacher's presentation of the affirmative defense of retaliatory discharge forced the school board to judge whether its own decision to discharge was made in retaliation for her reporting possible violations of school programs to the State Department of Education, "a matter on which the school board cannot realistically distance itself by accepting the hearing examiner's findings, as it can findings on teacher misconduct only."

*Villarreal v. Independent Sch. Dist. No. 659,* 520 N.W.2d 735, 738 (Minn.1994) (discussing and quoting *Graham,* 472 N.W.2d at 119).

Manteuffel also cites *Stadum v. Norman County,* 508 N.W.2d 217 (Minn.App.1993), in which this court held that *Dietz* and *Dokmo* do not apply to pure breach of contract claims because:

> [Rather than] seeking scrutiny of the manner in which the county has discharged its administrative function[,] * * * [a plaintiff is] seeking a legal determination on whether the county breached her contractual rights * * *.

*Id.* at 219.

The issue of whether an administrative body can fairly adjudicate the propriety of its own conduct is a compelling subject. We are mindful, too, of the inherent separation of powers issues that arise when the judiciary reviews conduct of an administrative body. Fortunately, however, the legislature has resolved the separation of powers problem in this case by providing explicitly for a cause of action in the district court. We need not, therefore, decide whether this case requires an exception to the *Dietz* rule.

Although both parties to this appeal focus their attention primarily on *Dietz,* they fail to address the words that qualify the entire *Dietz* analysis:

> This court has long held that ***in the absence of an adequate method of review or legal remedy,*** judicial review of the quasi-judicial decisions of administrative bodies, if available, must be invoked by writ of certiorari.

*Id.* at 239. No case, it seems, presents more clearly "an adequate method of review or legal remedy" than the present one:

> [A]n employee injured by a violation of [the Whistleblower Act] may bring *a civil action* to recover any and all damages recoverable at law, together with costs and disbursements, including reasonable attorney's fees, and may receive such injunctive and other equitable relief as determined by the *court.*

Minn.Stat. § 181.935(a). The Act applies specifically to governmental employers:

> 'Employer' means any person having one or more employees in Minnesota and includes the state and any political subdivision of the state.

Minn.Stat. § 181.931, subd. 3. The trial court, therefore, erred in holding that a writ of certiorari to this court was the exclusive method by which Manteuffel could secure judicial review of the city's termination decision.[1] *See Larson v. New Richland Care Ctr.,* 538 N.W.2d 915 (Minn.App.1995) (holding that district courts have subject matter jurisdiction over Whistleblower claims); *Janklow v. Minn. Bd. of Examiners for Nursing Home Adm'rs,* 536 N.W.2d 20 (Minn.App.1995) (plaintiff brought a Whistleblower cause of action in district court against a subdivision of the state).

In addition to the legislature's explicit grant of a civil cause of action, we note that because this court is limited to review, we are unable to reach out to administer all of the remedies provided in the Whistleblower Act. This court cannot, for instance, engage itself in the sort of fact-finding inquiries necessary to assess damages or the suitability of other forms of relief under the Act. Were we to adopt the city's position, injured parties seeking review by writ of certiorari would be unable to obtain the relief provided to them under the Act.

Finally, the cases cited by the trial court are consistent with our holding. *Neitzel,* for instance, involved a county board's denial of a conditional-use permit and a building permit:

> Because no right of judicial review of the county board's quasi-judicial decision has been provided by *statute* or appellate rules, a writ of certiorari issued by this court was the only available method to obtain judicial review of the board's decision.

*Neitzel v. County of Redwood,* 521 N.W.2d 73, 76 (Minn.App.1994) (emphasis added). Manteuffel's action, on the other hand, *is* authorized by statute.

Both the parties and the trial court in this case misapprehended *Dietz.* The Minnesota Supreme Court did not intend to pull the teeth from civil rights legislation as it applies to governmental bodies by affording them the same deference due in the context of the lawful exercise of their administrative discretion. We hold, therefore, that employees of the state and its subdivisions who claim to be injured by violations of the Whistleblower Act are entitled to a civil cause of action in the district court as provided by Minn.Stat. § 181.935(a).

### DECISION

The trial court's order is reversed and the case is remanded for a trial on the merits.

**Reversed and remanded.**

---

1. We note that this court has come to the same conclusion regarding claims under the Minnesota Human Rights Act:

   > *Dietz* does not conflict with a discrimination victim's right to bring a civil cause of action directly in district court under the MHRA.

   *Willis v. Sherburne County,* Nos. C6–95–363, C5–95–371, unpub. op., 1995 WL 479640 (Minn.App. August 15, 1995) (citing Minn.Stat. § 363.14, subds. 1, 2 (1992)).