OPINION
STRAS, Justice,
This case involves the relationship between the court of appeals’ certiorari jurisdiction to review quasi-judicial decisions of local governmental entities and the broad power of Minnesota district courts to hear and determine actions brought under 42 U.S.C. § 1983 (2012), a federal civil-rights statute. Mark Zweber, • an owner of a large parcel of undeveloped land, brought a section 1983 action against Scott County and Credit River Township, alleging that they had deprived him of his property without just compensation and violated his equal-protection rights. The district court concluded that it had subject-matter jurisdiction over Zweber’s action, but the court, of appeals reversed. According to the court of appeals, the district court lacked jurisdiction because Zweber’s exclusive remedy was to seek a, writ of certiorari from the court of appeals. Zweber v. Credit River Twp. (.Zweber II), No. A14-0893, 2016 WL 1128985, at *1 (MinmApp. Mar. 16, 2016). Because the district court has jurisdiction over Zweber’s section 1983 action, we reverse the decision of the court of appeals.
*607 I.
Zweber owns a large parcel of undeveloped land in Credit River Township (“Township”), which is located in Scott County (“County”). Zweber contacted County officials in April 2003 to develop a plan for the development of the parcel, which he named Liberty Creek.' Among other things, Zweber and the County discussed where to locate roads within the subdivision and how to stem the flow of traffic into adjoining neighborhoods. The discussions culminated in the submission of Zweber’s 2006 preliminary plat application, which proposed to divide the parcel into 39 lots and 1 outlot.
The then-owner of an adjoining development known as the Territory wrote a letter to the County that criticized the Liberty Creek plan. The primary complaint was that Liberty Creek, as proposed in the preliminary plat application, would cause a substantial increase in traffic through the Territory. County officials informed Zwe-ber that he would have to change a road connection in the proposed plat to ease the flow of traffic through the Territory.
, Several, months later, the Scott County Planning Commission (“Planning Commission”) recommended approval of Zweber’s amended plat on the condition that the Liberty Creek development occur in phases. The Scott County Board (“County Board”) then imposed another condition: Zweber was required to construct a barricade at the border between Liberty Creek and the Territory that was to remain in place until the development was 90% complete. The County Board eventually approved Zweber’s final plat application and the Master Developer’s Agreement, the latter of which Zweber signed.
Despite the County Board’s approval of the final plat, Zweber did not proceed with the Liberty Creek development. Instead, in 2008, Zweber submitted to the County an application for a-proposed re-subdivision of the parcel, now called the Estates of Liberty Creek. This time, based on the recommendation of the Planning Commission, the County Board denied the application.
Zweber timely appealed the County Board’s decision to thé Minnesota Court of Appeals, which granted a writ of certiorari, reversed the County’s decision, and ordered the County to approve Zweber’s application. Zweber v. Scott Cty. Bd. of Comm’rs (Zweber I), No. A09-1990, 2010 WL 2733275, at *2, *8 (MinmApp. July 13, 2010). For over 2 years after the court of appeals’ decision, the . County took no formal action to approve the proposed re-subdivision.
In 2013, Zweber brought the present action, which includes claims under 42 Ú.S.C. § 1983, in Scott County District Court. In his amended complaint, he seeks money damages based on allegations that: (1) the County took his property without just compensation by placing conditions on the approval of his plat application; and (2) the County’s treatment of him from 2006-2012, the period during which it considered his various applications, violated his equal-protection rights. Zweber also requests a writ of mandamus ordering the County to commence inverse-condemnation proceedings to compensate him for the taking.
• In a motion for summary judgment, the County argued that the district court did not have subjeet-matter jurisdiction because Zweber’s exclusive avenue for review of the County’s decisions was to seek a writ of certiorari from the court of appeals. The district court rejected the County’s argument, concluding that it has jurisdiction over section 1983 actions. The court of appeals reversed, reasoning that the County’s "plat approval subject to conditions is a quasi-judicial action, which is *608 reviewable only by certiorari appeal within 60 days,” and that Zweber’s “constitutional claims are not separate and distinct from that action." Zweber II, 2015 WL 1128985, at *1. We granted Zweber’s petition for review.
II.
The question presented in this case is whether the court of appeals or district courts have the authority to adjudicate constitutional claims arising out of decisions made by local government entities.[1] The court of appeals concluded that it, not the district court, would have exclusive jurisdiction over both of Zweber’s constitutional claims because the County’s decisions on the plat and re-subdivision applications were quasi-judicial and the constitutional claims are not “separate and distinct” from them. Zweber II, 2015 WL 1128985, at *4-5; see also Minn.Stat. § 606.01 (2014) (“The party shall apply to the Court of Appeals for the writ.”). The court of appeals’ view is that, if resolving a constitutional claim does not “stand alone” from a quasi-judicial decision, a certiorari appeal is the only way to raise and preserve the constitutional claim. Zweber II, 2015 WL 1128985, at *4.
The parties’ dispute over which court has the authority to decide Zweber’s claims raises a question of subject-matter jurisdiction that we review de novo. State v. Losh, 755 N.W.2d 736, 739 (Minn.2008). Subject-matter jurisdiction “refers to a court’s authority ‘to hear and determine a particular class of actions and the particular questions’ presented to the court for its decision.” Giersdorf v. A & M Constr. Inc., 820 N.W.2d 16, 20 (Minn.2012) (quoting Robinette v. Price, 214 Minn. 521, 526, 8 N.W.2d 800, 804 (1943)). The determination of whether a particular court has subject-matter jurisdiction depends on whether the court in question has the statutory and constitutional power to adjudicate the case. Id. (citing Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)); see also Losh, 755 N.W.2d at 739 (“Subject-matter jurisdiction is a court’s power to hear and determine cases that are presented to the court.”).
Minnesota’s district courts are courts of general jurisdiction that have the constitutional authority to hear “all civil and criminal cases.” Minn. Const, art. VI, § 3. The jurisdictional question in this case, therefore, relates to the statutory authority of district courts to hear the particular types of claims involved here: an inverse-condemnation claim and constitutional claims brought under 42 U.S.C. § 1983. We have held that review of certain decisions of local government entities are subject to review only by certiorari under Minn.Stat. § 606.01, which grants exclusive jurisdiction to the court of appeals over petitions for a writ of certiorari.[2] See, e.g., Cty. of *609 Washington v. City of Oak Park Heights, 818 N.W.2d 533, 539 (Minn.2012); see also Minn.Stat. § 606.01 (stating that parties “shall apply to the Court of Appeals” for a writ of certiorari). District courts do not have subject-matter jurisdiction over claims that must be resolved in a certiorari appeal. See Dokmo v. Indep. Sch. Dist. No. 11, 459 N.W.2d 671, 676-78 (Minn.1990) (holding that a declaratory-judgment action in district court is unavailable when review of a quasi-judicial decision is available by certiorari).
The proceedings conducted by local government entities can result in two types of decisions, the categorization of which determines whether review by cer-tiorari is obligatory. The first type of decision is legislative. Decisions are legis-' lative if they have broad applicability and “affect the rights of the public generally.” Cty. of Washington, 818 N.W.2d at 539. A legislative decision can be reviewed by filing a summons and complaint in district court. See id. If the County’s decisions on Zweber’s plat and re-subdivision applications were legislative, the district court would have jurisdiction to review the decisions themselves and any derivative constitutional claims. See Dead Lake Ass’n, Inc. v. Otter Tail Cty., 695 N.W.2d 129, 134-35 (Minn.2005).
The other possibility is that the County’s decisions were quasi-judicial, which would have made them reviewable only through the filing of a petition for a writ of certiorari with the court of appeals. Minn.Stat. § 606.01; see Cty. of Washington, 818 N.W.2d at 539 (recognizing that the “quasi-judicial decisions of a municipality are reviewable only by certiorari”). In general, quasi-judicial decisions “affect the rights of a few individuals analogous to the way they are affected by court proceedings.” Interstate Power Co. v. Nobles Cty. Bd. of Comm’rs, 617 N.W.2d 566, 574 (Minn.2000). In this case, even if the decisions of the County were quasi-judicial, as the court of appeals concluded, it is still possible that the district court would have jurisdiction to adjudicate the derivative constitutional claims pleaded..in Zweber’s amended complaint.
The court of appeals recognized such a possibility, but applied a test requiring the constitutional claims to be “separate and distinct” from the County’s quasi-judicial decisions for the district court to have jurisdiction. Zweber II, 2015 WL 1128985, at *4. This test, first articulated by the court of appeals in City of Minneapolis v. Meldahl, 607 N.W.2d 168, 172 (Minn.App.2000), requires derivative claims to be raised in a petition for a writ of certiorari when “an inquiry into the facts surrounding” the claims would “involve an inquiry into” the quasi-judicial decisions themselves. See Zweber II, 2015 WL 1128985, at *4. Meldahl involved a decision by the *610 City of Minneapolis to demolish a building that"it -considered a. nuisance. 607 N.W.2d at 170. The court of appeals concluded that the owner of the building could not bi’ing an inverse-condemnation action against the City. Id. at 172. Instead, the owner was required to-“assert .that a taking occurred ... through petition for a writ of certiorari to [the court of appeals].” Id. In this case, the court of appeals extended the rule from Meldahl to divest district courts of jurisdiction over all constitutional claims, including those brought under 42 U.S.C. § 1983, that are not “separate and distinct” from a quasi-judicial decision. See Zweber II, 2015 WL 1128985, at *4-5.
 We decline to adopt the “separate and distinct” test from Meldahl[3] In fact, the resolution of this case, does not require us to announce a new rule at all, as an existing rule fully addresses the allocation of jurisdiction between district courts and the court of appeals in cases involving quasi-judicial decisions. In County of Washington, we addressed “whether cer-tiorari reviéw” was the “exclusive method” to review a city council’s denial of a request for a refund of an alleged overpayment for sewer and water services. 818 N.W.2d at 536. We explained that the district court did not have subject-matter jurisdiction over ah unjust-enrichment claim brought by the county because “the outcome of the claim” depended “upon the validity of [a] ... quasi-judicial decision.” Id. at 542., Under the rule from County of Washington, “[w]hen the underlying basis of the claim requires review of a municipality’s quasi-judicial decision to determine its-validity” — that is, whether the decision was unreasonable, arbitrary, or capricious — then the “exclusive method of review is by certiorari under chapter 606.” Id.; see also Williams v. Smith, 820 N.W.2d 807, 814 (Minn.2012) (concluding that a tort claim that “[did] not involve any inquiry into” a government entity’s employment decision was not subject to cer-tiorari review); .Dietz v. Dodge Cty., 487 N.W.2d 237, 239 (Minn.1992) (stating that a court conducting certiorari review determines whether a decision “was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law,- or without any evidence to support it”). If resolution of the claim does not depend on the validity of the quasi-judicial decision, then the party may . raise 'the claim by filing an action in a district court. Cty. of Washington, 818 N.W.2d at 542.
The rule we announced in County of Washington is consistent with another of our decisions, Willis v. County of Sherburne, 555 N.W.2d 277 (Minn.1996). In Willis, we addressed whether a county employee who had been terminated could bring a separate action for defamation in district court when the defamatory statements were related to the employee’s dismissal. Id. at 278-79. Based' on the requirement that review of quasi-judicial decisions be by certiorari, we determined that the court of appeals was the exclusive venue to review the termination decision itself, regardless of whether the employee framed the claim as one for wrongful termination or breach of contract. See id. at 280,. 282, Notably, however, we reached a different conclusion *611 with respect to Willis’s defamation claim, reasoning that whether the County knew the statements were false before publishing them to a third party would “not involve any inquiry into the county board’s discretionary decision to terminate Willis.” Id. at 282-83. Accordingly, like County of Washington, Willis stands for the proposition that an aggrieved party may bring a claim in district court arising out of a local governmental entity’s quasi-judicial decision so long as adjudication of the claim does not require an inquiry into the validity of the decision.
The concurrence would embrace a rule that neither party urges us to adopt. Under. the concurrence’s rule, a party may file a petition for a writ of certiorari to reyiew a local governmental entity’s quasi-judicial decision only when an adequate remedy at- law is unavailable. Aside from creating a conflict with the rule from County of Washington, 818 N.W.2d at 542, a long line of cases casts doubt on the concurrence’s proposed rule.[4] In Dokmo v. Independent School District No. 11, for example, we concluded that the “only method of appealing” a school board’s decision to deny a teacher’s reinstatement request was “by writ of certiorari.” 459 N.W.2d at 673. We reached this conclusion despite the fact that the teacher who
challenged the school board’s decision, indisputably had an adequate statutory remedy: a declaratory-judgment action. See id. at 676-77. By seeking a declaratory judgment, a remedy , at law, the-teacher who sought reinstatement in Dokmo could have vindicated her rights in district court. Yet in reiterating the exclusive nature of certiorari, we emphasized that our “decisions express far more than a- preference” toward certiorari review. Id. at 674; see also Tischer v. Hous. & Redev. Auth. of Cambridge, 693 N.W.2d 426, 427, 431-32 (Minn.2005) (stating that review of a termination decision was exclusively by certiora-ri even though Tischer sued for breach of an employment contract under Minn.Stat. § 469.014 (2014)); Moberg v. Indep. Sch. Dist. No. 281, 336 N.W.2d 510, 519 (Minn.1983) (“[A] writ of certiorari is the proper form of action for challenging a school closing decision, rather than the declaratory judgment action brought in this case.”). Based on Dokmo, therefore, as well ás County of Washington, Willis, and Williams, we reject the concurrence’s proposed rule for determining the exclusivity of certibrari review.
The rule .from these cases is that certio-rari review is exclusive when a claim requires an inquiry into the validity of a quasi-judicial decision. See Cty. of Wash *612 ington, 818 N.W.2d at 542; Willis, 555 N.W.2d at 282; Dokmo, 459 N.W.2d at 676-77. In applying this rule, we acknowledge that there is some overlap in the facts underlying Zweber’s constitutional claims and the County’s decisions on Zwe-ber’s plat and re-subdivision applications. Nevertheless, the presence of overlap is not enough; the claims themselves need not be completely separate and distinct for the district court to have jurisdiction over them. Rather, it is sufficient if the constitutional claims do not require the district court to examine the validity of the County’s decisions.
The takings claim does not require an examination into the validity of the County’s decisions because it actually assumes their validity. The takings claim, as Zwe-ber pleads it, presupposes that the conditions placed on his plat application were valid, but alleges that they “constitute^] a taking [for] which [he] must be compensated.” To adjudicate this claim, the fact-finder will have to determine whether the conditions placed on Zweber’s plat application constituted a regulatory taking of his property. If it did, then Zweber will be entitled to damages or a writ of mandamus ordering the initiation of inverse-condemnation proceedings against the property.
We reach the same conclusion on Zwe-ber’s equal-protection claim. Zweber alleges differential treatment by the County and the Township “in comparison to similarly situated property owners.” The facts underlying the equal-protection claim span approximately 6 years, extending to the period both before and after the County’s decisions on his plat and re-subdivision applications. See Willis, 555 N.W.2d at 282 (noting that the events supporting Willis’s defamation claim began over a year before the County’s quasi-judicial decision to terminate him). Like the takings claim, Zweber does not seek reversal or modification of the County’s quasi-judicial decisions. In fact, the complaint makes clear that development of the parcel is no longer feasible and seeks only money damages for the wrongs allegedly committed by the County. Adjudicating Zweber’s equal-protection claim therefore does not depend “upon the validity of the [County’s] quasi-judicial decision.” Cty. of Washington, 818 N.W.2d at 542.
The constitutional claims in this case stand in contrast to the claims from Dietz. Dietz involved claims for “wrongful discharge” and “unlawful discrimination” arising out of Dodge County’s decision to terminate Dietz’s employment. 487 N.W.2d at 238. In her complaint, Dietz sought “compensatory damages, reinstatement, and damages for mental anguish.” Id. We observed, especially in light of the reinstatement request, that “[t]he cause of action alleged in Dietz’s complaint would require the rights and liabilities of the parties to be fixed not by the terms of the contract, but by the propriety of the county’s exercise of discretion in terminating her.” Id. at 240; Willis, 555 N.W.2d at 282 (“Just as in Dietz, Willis requests reinstatement, back pay, lost fringe benefits, and front pay.”). Accordingly, we held that Dietz “was obliged to seek judicial review of the county’s termination decision by writ of certiorari.” Dietz, 487 N.W.2d at 240; cf. Nw. College v. City of Arden Hills, 281 N.W.2d 865, 868 (Minn.1979) (stating that this court, not the district court, should independently review a city council’s zoning decision and concluding that the denial of a building permit was “arbitrary”).
Unlike the wrongful-discharge and unlawful-discrimination claims in Dietz and Willis, the “rights and liabilities” of the parties in this case are not “fixed by the propriety of the [C]ounty’s decision” to deny Zweber’s plat and re-subdivision ap *613 plications. Willis, 555 N.W.2d at 282. Each of Zweber’s constitutional claims can be adjudicated without inquiring into the validity of the County’s decisions. Indeed, Zweber does not request injunctive relief seeking to “undo” the County’s decisions, which contrasts sharply with the reinstatement requests made in Dietz and Willis. See Dietz, 487 N.W.2d at 240 (“[Dietz’s] request for reinstatement and damages for mental anguish highlights the fact that her claim is not an ordinary action for failure to perform on a contract for goods or services.”); Willis, 555 N.W.2d at 282. And Zweber does not use “creative pleading” to bring a veiled challenge to the validity of the County’s decisions. Cty. of Washington, 818 N.W.2d at 542.
The County nevertheless raises a public-policy objection to allowing Zweber’s claims to proceed. The County complains that dividing the review of quasi-judicial decisions and the adjudication of any derivative claims unnecessarily subjects local governmental entities to expanded liability and protracted proceedings. The County instead suggests that the better procedure would have been for Zweber to have first argued in a petition for a writ of certiorari that the conditions placed on approval of his plat were unconstitutional, and then, if the court of appeals had accepted his argument, subsequently pursued a takings claim in district court. However, nothing in Minn.Stat. § 606.01, nor in our case law, suggests that such an approach is required.
The County also fails to explain how the court of appeals can adjudicate constitutional claims of the type presented here, which ordinarily involve conflicting evidence and disputed facts. After all, a writ of certiorari is “not a writ upon which to try issues,” State v. Canfield, 166 Minn. 414, 415, 208 N.W. 181, 181 (1926), and the . court of appeals, as an appellate tribunal, cannot weigh evidence as a trier of fact, Nelson, 859 N.W.2d at 294. Accordingly, the County’s objection does not change our conclusion that, regardless of whether the County’s decisions on the plat and re-subdivision applications were legislative or quasi-judicial, the district court has jurisdiction to adjudicate Zweber’s constitutional claims.
III.
For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.[5]
Reversed and remanded.
HUDSON, J., took no part in the consideration or decision of this case.
CHUTICH, J., not having been a member of this court at the time of submission, to<j>k no part in the consideration or decision of this case.

. Because the answer to this question resolves the case, we need not address Zweber’s other argument that the 60-day period to issue a writ of certiorari, see Minn.Stat. § 606.01 (2014), is preempted by the 6-year statute of limitations for section 1983 claims, see Owens v. Okure, 488 U.S. 235, 249-50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); see also Minn.Stat. § 541.05, subd. 1(5) (2014). Accordingly, we disagree with the suggestion in the concurrence that we are deciding, implicitly or otherwise, “that some section 1983 claims ... should be resolved by certiorari.” By declining to address Zweber’s preemption argument, we are simply leaving a discussion of the preemptive scope of 42 U.S.C. § 1983 for another day and a different case.

. The concurrence conflates two separate questions. The question that the court of appeals answered, and on which we granted review, was whether Minnesota law required Zweber to bring his constitutional claims in a petition for a writ of certiorari — that is, whether certiorari review is exclusive under the facts of this case. The question that the *609 concurrence apparently answers is whether certiorari review is available, which is a question that no one asks us to address. For instance, the concurrence "base[s] [its] conclusion on the availability of a statutory remedy” and concludes "that certiorari review by the court of appeals was not available to Zwe-ber because he has a statutory remedy under 42 U.S.C. § 1983 for the alleged violation of his constitutional rights.” (Emphases added.) See, e.g., Nelson v. Schlener, 859 N.W.2d 288, 292 (Minn.2015) (“Therefore, if [a statute] provides a specific process for review, certio-rari review by the court of appeals is not available.” (emphasis added)). Yet the court of appeals already answered the question resolved by the concurrence — whether certiora-ri review was available to Zweber — when it ordered the County to approve Zweber’s re-subdivision application in the 2010 certiorari appeal'. Zweber I, 2010 WL 2733275, at *8. Contrary to the concurrence's argument, therefore, certiorari review was not only theoretically available to Zweber, he actually re- ■ ceived it.

, It is true that we characterized the 'defamation claims from Willis v, County of Sher-burne, as "separate and distinct" from the County’s decision to terminate Willis’s employment. 555 N.W.2d 277, 282 (Minn.1996). But we used the phrase to describe the relationship between Willis’s defamation claims and the County’s termination decision, not to announce a new test. In fact, the next sentence in Willis, which examines whether the defamation claims would require "an inquiry into the county board's discretionary decision to terminate Willis,” is the closest we came to announcing a test. 555 N.W.2d at 282-83.

. The concurrence criticizes us for failing to adopt Meldahl’s "separate and distinct” test, which it says we "have already adopted.” We disagree. Our view, which finds support in both Willis and Williams, is that we used the phrase "separate and distinct” to describe the relationship between the claims in those cases and the underlying quasi-judicial decisions, not to announce a new test. In fact, in both cases, we used the phrase “separate and distinct” together with the test we apply today from County of Washington. Williams, 820 N.W.2d at 814 (“We conclude that a tort claim, such as for negligent misrepresentation, that is ‘separate and distinct’ from the • government agency’s employment decision and does not involve any inquiry into the agency’s ‘discretionary-decision' is not subject . to certiorari review.”); ,Cty. of Washington, 818 N.W.2d at 542; Willis, 555 N.W.2d at 282-83. What is most puzzling about the concurrence’s criticism, however) is that, of ■ all the tests, Meldahl is least compatible with -the concurrence’s rule, which would allow a claim to be brought in district court whenever an adequate remedy at law exists, regardless of whether the claim is "separate and distinct’’ frbm a quasi-judicial decision. ■ The concurrence's rule, in -other words, would substantially narrow the circumstances in which certiorari review is available, which is exactly táe opposite of hoW the Meldahl test operates. See Meldahl, 607 N.W.2d at 172-173.

. We acknowledge that the district court will likely need to make a decision on Zweber’s inverse-condemnation claim before it can adjudicate his section 1983 takings claim. See Williamson Cty. Reg’l Planning Comm’n v. Hamilton Bank, 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) (holding that a party’s section 1983 takings claim is not ripe “until it has used the procedure [provided by the state] and been denied just compensation”).